**In re Teri Lynn KARR, Debtor.**

**Teri Lynn KARR, Plaintiff,**

v.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant.**

Bankruptcy No. 2–90–08052.
Adv. Pro. No. 2–90–0334.

United States Bankruptcy Court,
S.D. Ohio, E.D.

May 24, 1991.

Teri Lynn Karr, pro se.

Wayne Link, Columbus, Ohio, for plaintiff.

Donald Mullin, Columbus, Ohio, for defendant.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

## OPINION AND ORDER ON MOTIONS FOR TURNOVER OF PROPERTY FOR RELIEF FROM STAY

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Preliminary Considerations and Jurisdictional Statement*

These matters are before the Court upon the filing of various pleadings in the debtor's main Chapter 13 bankruptcy case and in an adversary proceeding initiated by the debtor on December 21, 1990. Specifically, the Court is asked to rule upon the following:

(a) Motion By Debtor For Authorization To Redeem Property (filed December 21, 1990 in the adversary proceeding);

(b) Debtor's Amended Complaint to Compel Turnover Of Property (filed January 10, 1991 in the adversary proceeding);

(c) General Motors Acceptance Corporation's ("GMAC") Motion For Relief From Stay (filed January 15, 1991 in the main case);

(d) GMAC's Memorandum Contra Motion By Debtor For Authorization To Redeem Property (filed January 15, 1991 in the main case);

(e) Debtor's Motion To Deny Relief From Stay (filed February 1, 1991 in both the main case and adversary proceeding); and

(f) Answer of Defendant GMAC (filed February 20, 1991 in the adversary proceeding).

The Court has jurisdiction in this proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(E) which this bankruptcy judge may hear and determine.

## II. *Factual Background*

The following facts are basically undisputed by the parties.

The debtor purchased a Pontiac Grand Am (the "Automobile") in 1989. At the time of the purchase, the debtor made a $6,250 down payment consisting of a $5,000 trade-in and the application of a $1,250 factory rebate. The balance of the purchase price was financed by GMAC. As is customary, GMAC took a security interest in the Automobile to secure the loan.

The loan went into default and on October 31, 1990, GMAC repossessed the Automobile. On November 5, 1990, GMAC filed suit in Franklin County Municipal Court seeking permission to retain possession of the Automobile as security for its debt pursuant to the provisions of Ohio Revised Code ("Ohio Rev.Code") § 1317.12. On that same day, the Franklin County Municipal Court issued an order (the "State Court Order") which states in pertinent part:

> This cause came on to be heard by the Court upon Plaintiff's motion for an order permitting it to retain possession of Defendant's 1989 Pontiac Grand Am as security for Defendant's obligation to Plaintiff. Upon the evidence, it is the finding of the court that Plaintiff has reasonable cause to believe that the Defendant intends to conceal the collateral, it is therefore,
>
> ORDERED, that Plaintiff shall retain the Defendant's 1989 Pontiac Gran [sic] Am S/N 1G2NE14U0KC846001 as security for Defendant's debt. The Court further orders that if the Defendant cures her default, the Plaintiff shall not dispose of the collateral unless the Defendant again defaults, and it shall make such collateral available to the Defendant when the debt is paid in full. In the event that Defendant does not cure her default within 20 days from the date hereof, Plaintiff may dispose of the collateral pursuant to applicable law.

On November 27, 1990, GMAC obtained a repossession title to the Automobile in anticipation of selling it. However, the Automobile was never sold. Prior to GMAC's obtaining the repossession title, the debtor neither cured her defaults under the loan nor redeemed the Automobile. The debtor filed her voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on December 3, 1990.

## III. *Issues Presented*

The confusion created by the various pleadings notwithstanding, the Court is able from the March 11, 1991 hearing on these matters to narrow the issues to two in number. Specifically, the Court must first determine whether all of the debtor's legal and equitable interests in the Automobile were terminated prepetition such that the Automobile would not be property of the debtor's bankruptcy estate. Second, if the Court determines that the Automobile is property of the estate, then the Court must decide whether GMAC is entitled to relief from the automatic stay imposed by 11 U.S.C. § 362(a).

## IV. *Legal Discussion*

### A. *The Automobile Is Property Of The Estate*

■ While acknowledging this Court's prior ruling that the mere issuance of a repossession title does not terminate a debtor's entire interest in an automobile [1], GMAC advances the argument that the debtor, by virtue of Ohio statutory law and the State Court Order issued pursuant thereto, no longer had at the petition date any legal or equitable interest in the Automobile. Since both GMAC's argument and this Court's holding rely on the relevant Ohio statutes, as well as the language of the State Court Order, the Court will first set forth those statutes.

Ohio Rev.Code § 4505.10 states in pertinent part:

> In the event of the transfer of ownership of a motor vehicle by operation of law, as upon inheritance, devise or bequest, order in bankruptcy, insolvency,

---

1. In *In re Wallace,* 102 B.R. 114 (Bankr.S.D.Ohio 1989), this Court found that, under Ohio law, a debtor's entire interest was not terminated by the issuance of a repossession title and, accordingly, held that the repossessed vehicle was property of the debtor's estate.

replevin, or execution sale, or whenever the engine of a motor vehicle is replaced by another engine, or whenever a motor vehicle is sold to satisfy storage or repair charges, or repossession is had upon default in performance of the terms of a security agreement as provided in section 1309.01 to 1909.50 of the Revised Code, the clerk of the court of common pleas of the county in which the last certificate of title to the motor vehicle was issued, upon the surrender of the prior certificate of title or the manufacturer's or importer's certificate, or when that is not possible, upon presentation of satisfactory proof to the clerk of ownership and rights of possession to the motor vehicle, and upon payment of the fee prescribed in section 4505.09 of the Revised Code, and presentation of an application for certificate of title, may issue to the applicant a certificate of title to the motor vehicle....

Further, Ohio Rev.Code § 1317.12 states in pertinent part:

Notwithstanding any agreement to the contrary in a retail installment contract made on or after the effective date of this section, if collateral for a consumer transaction is taken possession of by the secured party on default, the secured party shall, within five business days after taking possession, send to the debtor a notice setting forth specifically the circumstances constituting the default and the amount by itemization that the debtor is required to pay to cure his default....

The debtor may cure his default within twenty days after the secured party retakes possession of the collateral, or within fifteen days after the secured party sends the notice required by this section, whichever is later, by delivering to the secured party the following:

(A) All installments due or past due at the time of such delivery;

(B) Any unpaid delinquency or deferred charges;

(C) The actual and reasonable expenses incurred by the secured party in retaking possession of the collateral provided that any portion of such expenses which exceeds twenty-five dollars need not be delivered to the secured party pursuant to this division, but shall be added to the time balance;

(D) A deposit by cash or bond in the amount of two installments, to secure the timely payment of future installments by the debtor. The secured party may apply such cash or the proceeds of such bond toward the satisfaction of the debt in the event of another default by the debtor.

During the period between the time a secured party retakes possession of the collateral and the expiration or exercise of the debtor's right to cure his default, the secured party shall make the collateral available for inspection by the debtor during reasonable hours.

If the debtor cures his default, he may take possession of the collateral. The secured party shall assemble the collateral and make it available to the debtor at a time and place that is reasonably convenient to both parties. If the debtor requests the secured party to return the collateral to the place from which it was taken, the secured party may charge the debtor the actual and reasonable expenses incurred in returning the collateral to the place from which it was taken, which amount shall be added to the time balance....

A secured party who reasonably believes that a debtor intends to conceal or remove the collateral from this state after curing his default may, within five days after retaking possession of the collateral, move in a court of competent jurisdiction that he be allowed to retain possession of the collateral as security for the debt. If the court finds reasonable cause to believe that the debtor intends to conceal the collateral or remove it from this state, it shall order that the collateral remain in the possession of the secured party, notwithstanding the other provisions of this section. If the debtor cures his default, the secured party shall

not dispose of the collateral unless the debtor again defaults, and he shall make such collateral available to the debtor when the debt is paid in full.

Finally, Ohio Rev.Code § 1309.49 [U.C.C. § 9–506] states:

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 1309.47 of the Revised Code, or before the obligation has been discharged under division (B) of section 1309.48 of the Revised Code, the debtor or any other secured party may, unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding, and preparing the collateral for disposition, in arranging for the sale.

Although these statutes have been the subject of some interpretation by this and other courts, and similar statutes have been interpreted by other courts, this Court is unable to uncover a published decision that falls on all fours. That being so, the Court is again given the opportunity to analyze these Ohio provisions and to perhaps clarify some of its statements in *Wallace.*

### 1. *Ohio Rev.Code § 4505.10*

In *In re Sutton,* 87 B.R. 46, 48 (Bankr. S.D.Ohio 1988), Judge Clark suggested that:

[a]lthough Ohio Rev.Code § 4505.10 lists the repossession of a motor vehicle as an illustration of an event that may result in a transfer of ownership by operation of law, a reading of the statute does not require the conclusion that the mere act of repossession is sufficient to cause a change of ownership. The statute explicitly refers to the Article 9 provisions of the Ohio Revised Code (§§ 1309.01 to 1309.50) and this court is of the opinion that Ohio Rev.Code § 4505.10 contemplates a 'completion' of the repossession procedure under state law, wherein a debtor's rights to redeem under Ohio Rev.Code § 1309.49 may be

cut off, before ownership of a motor vehicle is transferred by operation of law.

This Court agrees with such conclusion and in *Wallace* went one step further to hold that the issuance of a repossession title likewise fails to terminate all of the debtor's interests. *See, also, In re Bingham,* 116 B.R. 541 (Bankr.N.D.Ohio 1990).

### 2. *Ohio Rev.Code §§ 1309.49 and 1317.12*

Inasmuch as Ohio Rev.Code § 4505.10 fails to terminate all of the debtor's interest in the Automobile, the Court is left to determine the impact of Ohio Rev.Code §§ 1309.49 and 1317.12, as well as the State Court Order. GMAC's argument in this regard can be summarized as follows: "Since the debtor has not cured her default, and did not seek relief pursuant to Chapter 13 until December 3, 1990, it is submitted that the debtor's rights to redeem the collateral has [sic] expired pursuant to state law and court order." GMAC's Memorandum Contra Motion By Debtor For Authorization To Redeem Property at p. 2. This argument, however, blurs the distinct and separate right of a debtor to redeem collateral under Ohio Rev.Code § 1309.49 with the right of a debtor to retake possession of collateral through the curing of defaults under Ohio Rev.Code § 1317.12.

As to the debtor's right to redeem under Ohio Rev.Code § 1309.49, this Court and others have held that the debtor continues to possess such right until the collateral is sold or contracted for sale. Where the collateral is not sold prepetition, the debtor has an interest constituting property of the estate and, under the rationale of *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), turnover may be ordered pursuant to 11 U.S.C. § 542. *Wallace,* 102 B.R. at 114; *Bingham,* 116 B.R. at 541; and *Sutton,* 87 B.R. at 46.

■ In retail installment sales of consumer goods, the right of a debtor to redeem collateral under Ohio Rev.Code

§ 1309.49 is supplemented by a right to cure defaults under Ohio Rev.Code § 1317.-12. In comparison to the redemption provisions of Ohio Rev.Code § 1309.49 which require the debtor to tender fulfillment of *all* obligations secured by the collateral as well as other reasonable expenses, the provisions of Ohio Rev.Code § 1317.12 permit a debtor to retake possession of collateral by paying only due or past due installments, plus charges and expenses, together with the delivery of a deposit by cash or bond in the amount of two installments. Where a creditor feels especially insecure, it may move a court of competent jurisdiction under Ohio Rev.Code § 1317.12 for permission to retain possession of the collateral as security for the entire debt. It was under this provision that GMAC obtained the State Court Order.

Based upon the language of Ohio Rev. Code § 1317.12 and the State Court Order, GMAC could argue that the debtor's right to retake possession of the Automobile by curing defaults terminated by the passage of twenty days after the issuance of the State Court Order without any such cure. Neither the State Court Order nor the passage of time thereunder, however, terminated the debtor's redemption right under § 1309.49, which right continues until the Automobile is sold or contracted for sale. Since the Automobile was never sold or contracted for sale by GMAC, it is property of the debtor's estate which is subject to turn over to the debtor.

### B. *Relief From Stay Is Denied*

■ A separate issue is whether GMAC is entitled to relief from the automatic stay imposed by 11 U.S.C. § 362(a). Based upon the debtor's testimony at the hearing on these matters, the Court finds that the Automobile is necessary to the debtor's effective rehabilitation. Moreover, the debtor testified that she can and will insure the vehicle upon its turnover by GMAC. For those reasons, GMAC's request for relief from stay shall be denied. *In re Gunder*, 8 B.R. 390 (Bankr.S.D.Ohio 1980).

### V. *Conclusion*

In conclusion, the Court finds that judgment should issue in favor of the Debtor on her complaint for a turnover. The Court further finds that GMAC's motion for relief from the automatic stay should be denied. The issuance of a judgment implementing these findings, however, will be conditioned upon the following requirements. (1) The Debtor shall have twenty (20) days from notice of the entry of this order to present proof of insurance to counsel for GMAC and (2) the Debtor must request the Chapter 13 trustee to file a revised recommendation regarding the readiness of the Debtor's plan for confirmation. If the Debtor fails to timely take such actions or the Debtor's plan does not meet all tests for confirmation, the judgment for turnover will not be entered and GMAC shall be entitled to renew its motion for relief from stay.

IT IS SO ORDERED.