**In re Anthony J. PLUTA, Debtor.**

**Bankruptcy No. 96–41357–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 30, 1996.

than six years from the date of assessment.

Francis Lafayette, for Debtor.

David M. Banash, Boston, MA, for Chrysler.

Denise Pappalardo, Chapter 13 Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

### I. *Introduction*

Before the Court is a "Motion To Require Lienholder To Return Collateral (Motor Vehicle)" (the "Turnover Motion")[1] filed by Anthony J. Pluta (the "Debtor") and a "Motion For Relief From Automatic Stay of Chrysler Financial Corporation" (the "§ 362 Motion") ("Chrysler"). The issues for determination are (1) whether a certain 1995 Jeep Cherokee (the "Collateral" or the "Jeep") repossessed by Chrysler shortly before the commence-

**741**

ment of the case constitutes property of the Debtor's estate and, if so, (2) whether Chrysler is entitled to relief from the automatic stay under 11 U.S.C. § 362(d) so that Chrysler might sell the Collateral.

### II. *Facts*

The material facts in this case are not disputed. On or about October 31, 1995, the Debtor entered into a retail installment contract (the "Contract") with Cahillane Motors, Inc. for the purchase of the Jeep. Cahillane then assigned its interest in the Contract to Chrysler. The Contract requires the Debtor to make monthly payments in the sum of $389.79 through November 2000. Chrysler alleges and the Debtor does not deny that, as of February 5, 1996, the Debtor had made none of the required payments to Chrysler. On March 5, 1996, after giving notice to the Debtor of his payment defaults and his right to cure, Chrysler repossessed the Jeep. Thereafter, Chrysler notified the Debtor of his right to redeem the Jeep prior to March 26, 1996.

On March 19, 1996 (the "Petition Date"), prior to the expiration of the redemption period mandated by Massachusetts law, the Debtor filed a petition in this Court under Chapter 13 of the Bankruptcy Code. On April 12, 1996, the Debtor filed the Turnover Motion seeking return of the Jeep. On April 24, 1996, Chrysler filed an opposition to the Turnover Motion together with its § 362 Motion seeking leave to sell its Collateral. On May 8, 1996, the Court held a hearing on both the Turnover and § 362 Motions. At the conclusion of the hearing, the Court afforded the parties an additional period of time in which to file briefs and took the motions under advisement.[2]

---

1. The Debtor should have sought its requested relief by way of complaint, rather than by motion. Fed.R.Bankr.P. 7001(1). However, this defect is waivable and Chrysler has not raised the issue. The Court will, therefore, continue to treat the Turnover Motion as a contested matter. See Fed.R.Bankr.P. 9001, et. seq. Furthermore, although the Debtor fails to specifically request relief under § 542 of the Code, the Court will treat his Motion as such a request. Section 542(a) provides that:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodi-

an, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

2. At the hearing, Chrysler consented to an extension of the 30–day period for conclusion of the final hearing on its § 362 Motion. *See* § 362(e).

742

### III.  *The Parties' Positions*

In its Turnover Motion, the Debtor argues that the Jeep is property of the estate since, as of the Petition Date, title to the vehicle remained in his name and his ownership rights had not been severed. The Debtor further alleges that, on the Petition Date, the pay-off balance under the Contract was $18,-300.00 and the fair market value of the Jeep was $18,500.00. The Debtor also maintains that the Jeep is currently insured, that it is necessary to an effective reorganization, and that he has the means to provide Chrysler with adequate protection of its allowed secured claim in his Chapter 13 Plan of Reorganization (the "Plan").

In its opposition to the Turnover Motion, Chrysler alleges that, prior to March 26, 1996, the pay-off balance on the Contract was $18,770.89, and, on the Petition Date, the Jeep had a wholesale fair market value of $16,950.00. However, Chrysler contends that because it repossessed the Jeep prior to the Petition Date, the Debtor's only interest in the Jeep on the Petition Date was his statutory right of redemption. Chrysler argues further that the right of redemption was extended under § 108(b)[3] of the Code for only an additional 60 days from the Petition Date (May 17, 1996), and the right of redemption has now expired. Furthermore, Chrysler contends that, even during the redemption period, cure was never an available option for the Debtor. Rather, the Debtor's right to cure was determined under the Contract and, pursuant to Mass.Gen.L. ch. 255B, § 20A(d) and (e). Those rights do not include the right to cure after a secured creditor repossesses its collateral.

In its § 362 Motion, Chrysler adds that the Jeep is depreciating in value, that the Jeep is not necessary for an effective reorganization and that no reorganization is in prospect.

### IV.  *Discussion*

#### A.  The Turnover Motion

■  Mass.Gen.L. ch. 255B, § 20B(c) provides as follows:

(c) The buyer under a secured consumer credit transaction may redeem the collateral from the holder at any time within twenty days of the creditor's taking possession of the collateral, or thereafter until the creditor has either disposed of the collateral, entered into a contract for its disposition, or gained the right to retain the collateral in satisfaction of the buyer's obligation.

As of the Petition Date, Chrysler had not disposed of the Collateral, entered into a contract for its disposition, or gained the right to retain the Collateral in satisfaction of the Debtor's obligation.[4] Furthermore, the period from the repossession of the Jeep to the Petition Date was less than 20 days. Therefore, as of the Petition Date, the Debtor retained the right to redeem his Jeep. More importantly, as of the Petition Date, the Debtor remained title holder and owner of the Jeep. Thus, the Jeep constitutes property of the estate under § 541 of the Code.[5]

---

3. Section 108(b) provides the following:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be, before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b)(1) and (2).

4. Although not relevant in this case, Mass.Gen.L. ch. 106, § 9–505(2) sets forth the procedure necessary for a creditor to retain collateral in satisfaction of an obligation and thereby sever the debtor's right to redeem.

5. Section 541 of the Code provides, in relevant part, the following:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

Chrysler argues that because the Debtor lost the right to possession of the Jeep under state law and was left only with the right to redeem, that redemption right, and not the vehicle itself, was property of the estate. But Chrysler's position does not square with the Supreme Court's holding in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In the *Whiting Pools* case, the court noted that several provisions of the Code "bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *Id.* at 205, 103 S.Ct. at 2313–14. The Supreme Court found that:

> Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee. **Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate.** While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings.

*Id.* at 205–06, 103 S.Ct. at 2314 (footnotes omitted and emphasis supplied). The Supreme Court further found that, "[i]n effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession." *Id.* at 207, 103 S.Ct. at 2314–15 (footnotes omitted).

Chrysler urges that this Court give a restrictive reading to *Whiting Pools* and find that under Massachusetts law the Debtor's only property interest in the repossessed Jeep is his right to redeem it. This Court finds that such a reading of *Whiting Pools* would be unduly restrictive and unsupported by recent case law. In support of its position, Chrysler cites the following inapposite cases: *In re Gull Air, Inc.,* 890 F.2d 1255 (1st Cir.1989) (concerning debtor's license to use airport slots); *Good Hope Refineries, Inc. v. Benavides,* 602 F.2d 998 (1st Cir.1979) (concerning debtor's rights under an agreement similar to option contract); *In re Players' Pub,* 45 B.R. 387 (Bankr.D.Mass.1985) (concerning debtor's rights under a real property lease); *In re Anne Cara Oil Co., Inc.,* 32 B.R. 643 (Bankr.D.Mass.1983) (concerning debtor's rights under a franchise agreement). These cases are distinguishable from the instant case since in none did the Debtor own more than a contract right. In the instant case, the Debtor owns the res. Even after Chrysler repossessed the Collateral, title to the Jeep was in the Debtor's name and, under Mass.Gen.L. ch. 255B, § 20B(c), would so remain until it was sold, under contract for sale, or until Chrysler obtained the right to retain the collateral in satisfaction of the Debtor's obligation.

In support of its argument, Chrysler also cites *In re Morgan,* 23 B.R. 700 (Bankr. E.D.Pa.1982), which case is on point. In *Morgan,* the Court found that under Pennsylvania state law the Debtor's rights in a repossessed automobile were limited only to the right to redeem. The *Morgan* decision, however, predates *Whiting Pools.*

Since *Whiting Pools,* several bankruptcy courts have considered debtors' rights in repossessed collateral. Under substantially similar facts and applicable repossession and redemption statutes to the case at bar, the court in the case of *In re Teri Lynn Karr,* 129 B.R. 498 (Bankr.S.D.Ohio 1991) found that "[w]here the collateral is not sold prepetition, the debtor has an interest constituting property of the estate and, under the rationale of *United States v. Whiting Pools, Inc.,* ... [citation omitted], turnover may be ordered pursuant to 11 U.S.C. § 542." In the case of *In re Bruce Allen Bingham,* 116 B.R. 541, 543 (Bankr.N.D.Ohio 1990), after finding that "the mere act of repossession" was insufficient to transfer ownership of a repossessed vehicle under Ohio law and that the debtor maintained an equity of redemption, the court ordered the creditor to turnover the property. *Accord In re Young,* 193 B.R. 620, 621 (Bankr.D.D.C.1996) (finding

that "the mere seizure of the vehicle did not suffice to destroy the debtor's title as long as the debtor had a right to redeem"); *In re Wallace,* 102 B.R. 114 (Bankr.S.D.Ohio 1989). This Court agrees and finds that the Jeep is property of the estate and subject to turnover.

■ Finally, Chrysler argues that, even if redemption rights remain, the Debtor had, as of the Petition Date, already lost the right to cure the arrearage, pursuant to the provisions of the Contract and Mass.Gen.L. ch. 255B, § 20A(d) and (e)[6]. Mass.Gen.L. ch. 255B, § 20A(e) permits cure only if the secured creditor has not already, inter alia, accelerated the debt or repossessed the Collateral. In the instant case, Chrysler did both. Chrysler, therefore argues that cure is now impossible. However, Chrysler forgets the environment in which it speaks. Although Chrysler is correct that state law controls the Debtor's ownership rights in the Jeep,[7] 11 U.S.C. § 1322(b) alone controls how those rights once established may be modified by a Chapter 13 Plan. Sections 1322(b)(3) and (5) provide that a Chapter 13 plan may "provide for the curing of any default within a reasonable time." *See* § 1322(b)(5). To the extent that state law would say otherwise, state law would directly contravene § 1322(b)(3) and (5) and, therefore, could not stand. *See* U.S. Const., Art. VI, cl. 2.

In view of the foregoing, this Court finds that the Jeep is property of the estate and subject to turnover. However, whether the Jeep *should* be turned over at this time depends on the outcome of the § 362 Motion. It would be impractical to have Chrysler turn over the Jeep if the Court's next order were to grant Chrysler relief from stay.

### B. The § 362 Motion

■ The § 362 Motion fails to specifically indicate whether Chrysler intends to proceed under § 362(d)(1) or (2). Nevertheless, language in the motion is sufficient for the

Court to surmise that Chrysler intends to rely on both. Chrysler complains that its claim is not adequately protected and that a reorganization is not possible. However, it would be unfair to both parties were the Court to decide the § 362 Motion on the present record. Chrysler makes most if not all of its arguments based on the supposition that the Debtor would have to redeem the Jeep no later than May 17, 1996. That supposition has turned out to be untrue. The Court's docket shows that the Section 341 Meeting has now taken place, and the deadline has passed for any objection to the Debtor's Plan. However, no order of confirmation has been presented to the Court. Therefore, the Court does not know whether the Debtor intends to amend its Plan or whether some obstacle to confirmation has yet to be passed or is insurmountable. Finally, Chrysler's adequate protection argument would likely turn on whether payments had been made in the postpetition period or, if not made, whether any postpetition arrearage could be cured within a reasonable period of time.[8]

In view of the foregoing, it makes sense to hold a continued non-evidentiary hearing so that the situation can be re-examined with the benefit of the foregoing rulings and updated information.

### V. *Conclusion*

Although the Court finds that the Jeep in question here constitutes property of the estate and as such would be subject to turnover, on the grounds set forth herein, the Court will conduct a continued non-evidentiary hearing on the § 362 Motion. If the § 362 Motion is denied, the Court will likely order Chrysler to turn over the Jeep to the Debtor. If the § 362 Motion is allowed, the Court will deny the Turnover Motion.

---

**6.** M.G.L.A. c. 255B § 20A(e) provides in relevant part:

> Unless the secured creditor has first notified the buyer that he has elected to accelerate the unpaid balance of the obligation because of default, brought action against the buyer, or proceeded against the collateral, the buyer may cure a default. . . .

**7.** *See Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

**8.** This Court would hardly be surprised if the Debtor failed to make postpetition payments while the Jeep was being held by Chrysler and the turnover question was in doubt.