In re Debra E. SPEARS, Debtor.

Debra E. SPEARS, Plaintiff,

v.

FORD MOTOR CREDIT CO., Defendant.

Bankruptcy No. 98 B 02371.
Adversary No. 98 A 00902.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 6, 1998.

Erik A. Martin, Chicago, IL, for Plaintiff.

Sherman & Sherman, Chicago, IL, for Defendant.

Craig Phelps, Chicago, IL, Trustee.

## MEMORANDUM OPINION

JOAN H. LEFKOW, Bankruptcy Judge.

Plaintiff-debtor, Debra E. Spears ("plaintiff"), has brought this adversary proceeding to recover a 1997 Ford Escort that she purchased under a retail installment sales contract financed by defendant, Ford Motor Credit Company ("FMCC"). In addition, she moves that FMCC be sanctioned for willfully violating the automatic. stay in her case under Chapter 13 of the Bankruptcy Code ("Code"),[1] 11 U.S.C. §§ 1301 *et seq.*

Because it repossessed the vehicle before plaintiff filed her Chapter 13 petition, FMCC takes the position that the vehicle is not subject to turnover as property of plaintiff's bankruptcy estate. Responding to plaintiff's request for sanctions, FMCC further contends that it did not violate the stay by refusing to voluntarily turn over the vehicle at the outset of this case. For the reasons set forth below, plaintiff's motion for turnover under § 542(a) is granted, but her request for sanctions under § 362(h) is denied.

### Procedural Background

When plaintiff filed her Chapter 13 petition on January 26, 1998, she proposed to retain the vehicle, with payments on a secured claim of $15,000 to be paid FMCC over the course of a 36–month plan. Plaintiff alleges that on January 28, 1998, her counsel notified FMCC of the filing, and requested voluntary return of the vehicle. Complaint, ¶ 7 and Ex. A. FMCC did not return the vehicle, and it filed a motion to modify the automatic stay on February 17, 1998. That motion first came before the court on February 24, 1998.

---

1. Hereafter, unless otherwise noted, all references to statute are to the Bankruptcy Code.

This court denied FMCC's motion to lift the stay on March 19, 1998, after an evidentiary hearing. At that time, the court made findings that although plaintiff lacked equity in the vehicle, it was reasonably necessary for an effective reorganization under § 362(d)(2)(B). Also, FMCC's security interest was adequately protected, as the vehicle was fully insured and monthly payments under plaintiff's Chapter 13 plan were considerably greater than the rate at which the vehicle was depreciating each month.

Much of the evidence at the hearing had addressed the question whether plaintiff's second Chapter 13 case had been filed in good faith. Based on the testimony and documents in evidence, the court found that while plaintiff's second plan was in most respects the same as her first plan, the debtor's inability to fulfill the first plan was related to a partial loss of income. The second plan was not materially in default and plaintiff had agreed to payroll deduction, which had been established. While observing that FMCC's doubts regarding plaintiff's good faith were not unreasonable, the court found that plaintiff had filed her Chapter 13 petition in good faith. Ultimately, the court determined that if plaintiff would enter into a two-month default order, FMCC could be further assured that plaintiff was in good faith, and that its interest in the property was adequately protected. Finally, the court directed that upon entry of such default order, FMCC would be obligated to return the vehicle to plaintiff.

On March 24, 1998, FMCC moved that the court alter or amend the March 19 order, arguing that the evidentiary hearing had been a preliminary hearing, and that there should be a final hearing on the motion to lift the stay. Among other arguments made, FMCC contended that plaintiff had presented no evidence of insurance at the hearing, and that FMCC was not in possession of any information or knowledge regarding any insurance on the vehicle. Addressing the question whether it should turn the vehicle over to plaintiff, FMCC argued that unless plaintiff commenced an adversary proceeding for turnover, the court lacked jurisdiction to order return of the vehicle. The court ruled that an adversary proceeding was required, and plaintiff filed an adversary complaint for sanctions and turnover of property on May 5, 1998. The case was then tried to the court on June 11, 1998.

At the threshold of the hearing, plaintiff objected to the admission of new evidence, asserting that FMCC was collaterally estopped by the determination of fact issues on the motion to lift the stay. The court overruled the objection and received evidence on all fact issues save that of depreciation of the vehicle. Neither party has offered legal authority concerning the question of preclusion of evidence. The court will, therefore, consider all the evidence received at the hearing, in light of its earlier findings of fact, in reaching its judgment.

### Findings of Fact

In August, 1997, plaintiff purchased a 1997 Ford Escort automobile under a retail installment sales contract financed by FMCC in the approximate amount of $21,000. Plaintiff made a down payment of $1,500 and agreed to pay $375 per month for 60 months.

Plaintiff made no payments on the contract before filing a chapter 13 petition, Case No. 97 B 30513 on October 3, 1997. The case was dismissed on December 2, 1997 for failure to commence making payments pursuant to § 1326(a)(1). Because plaintiff had made no payments under the contract, FMCC repossessed the vehicle during or about the second week of January, 1998. Plaintiff then commenced this case by filing a second petition under Chapter 13 on January 26, 1998. Plaintiff admits that she filed this case for the purpose of saving her automobile.

Plaintiff testified that she failed to fund the first Chapter 13 plan because of loss of employment. Although plaintiff's testimony was not entirely clear, the court infers from it that plaintiff's principal place of employment is at Market Day in Itasca, Illinois, where she has worked for about three-and-one-half years. In addition, plaintiff has worked as a part-time "casual" worker for the United States Postal Service, for successive periods of not more than 89 days, as needed. Two weeks after she filed her first bankruptcy case, plaintiff lost the casual employment for one-and-one-half weeks. (In-

come from the casual employment had not been included in the budget for plaintiff's first Chapter 13 plan.)

Plaintiff continues to work at Market Day since she has lost her car, but she cannot work at the Postal Service because of lack of transportation. Plaintiff also uses her car to take care of family business such as shopping, laundry, transporting her son, and so forth.

Plaintiff's plan provides for monthly payments of $440, with full payment on secured claims and payment of 10% of unsecured claims. The plan was confirmed on April 7, 1998, and, with the exception of a small default noted in this court's March 19, 1998 order, there is no evidence that payments under the plan have not been made.

■ Plaintiff has maintained full coverage insurance on the vehicle for an unknown period of time. On April 29, 1998, she received a notice of cancellation. She resumed payments, so that as of the date of trial, there was full coverage insurance on the vehicle. Plaintiff makes monthly payments of $87 for insurance. Although plaintiff budgeted only $50 per month for automobile insurance in her Chapter 13 plan, she may amend her plan to take into account the fact that premiums are higher than anticipated.[2]

Based on all the evidence received, the court adheres to its earlier findings that FMCC's security interest is adequately protected and that plaintiff did not file her petition in bankruptcy in bad faith. Looking to the latter question, plaintiff's desire to save her car from repossession is not an improper motive. The court credits plaintiff's testimony that reduction in income, even though apparently small, caused the dismissal of her first case, and because plaintiff has funded her second plan, the court finds that this debtor in good faith seeks to adjust her debts as provided by the Bankruptcy Code.

## Conclusions of Law

As previously noted, plaintiff's complaint raises two legal issues. First, in connection with her claim under § 542(a), FMCC argues that plaintiff does not possess a sufficient property interest in the vehicle, such that turnover may be ordered. Second, FMCC contends that sanctions under § 362(h) are not required here, as it did not violate the automatic stay in refusing to return the vehicle after receiving notice of plaintiff's Chapter 13 filing. Because a decision in FMCC's favor on the question under § 542(a) would obviate the need to address the issue under § 362(h), this opinion addresses it first.

(1) Turnover Question Under § 542(a)

■ Section 542(a) generally empowers a bankruptcy trustee to recover property of the debtor that is in the possession, custody or control of third parties. *In re USA Diversified Products, Inc.*, 100 F.3d 53, 56 (7th Cir.1996). With exceptions not relevant here, § 542(a) provides,

[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Since turnover is a remedy to obtain what is acknowledged to be property of the bankruptcy estate, it follows that if the debtor does not have an interest in property at the commencement of the bankruptcy case, turnover cannot be ordered. *See In re Johnson*, 215 B.R. 381, 386 (Bankr. N.D.Ill.1997).

The Supreme Court has determined that turnover may be ordered in cases where, prior to the commencement of reorganization proceedings, property of a Chapter 11 debtor has been repossessed by a secured creditor. *United States v. Whiting Pools*, 462 U.S. 198, 206, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983). Although an order under § 542(a) modifies a creditor's procedural rights available to protect and satisfy its lien, the Court

---

**2.** Where there is a significant discrepancy between the actual cost of insurance coverage and the amount designated for payment of insurance premiums in a Chapter 13 debtor's budget, the lender's collateral may not be adequately protected. *See In re Richardson*, 135 B.R. 256, 259–60 (Bankr.E.D.Tex.1992).

reasoned that the creditor's rights under the Bankruptcy Code, including the right to adequate protection, replace the protection afforded the creditor by its repossession remedy. 462 U.S. at 206–07, 103 S.Ct. at 2314–15. In addition, the *Whiting Pools* decision commented that the rehabilitation of a debtor's business is facilitated if property subject to creditors' security interests is included in the reorganization estate. 462 U.S. at 203, 103 S.Ct. at 2313. *Whiting Pools* noted that its analysis depended in part on the reorganization context before it, and the Court left open the question whether § 542(a) would have the same broad effect in liquidation or adjustment of debt proceedings. 462 U.S. at 208 n. 17, 103 S.Ct. at 2315 n. 17.

Despite the reservation in *Whiting Pools*, the vast majority of courts have concurred that where repossession of a vehicle has occurred prepetition, but the vehicle has not yet been sold, a Chapter 13 debtor retains a sufficient interest in the vehicle so that turnover may be appropriate. *National City Bank v. Elliott (In re Elliott)*, 214 B.R. 148, 151 (6th Cir. BAP 1997); *American Honda Finance Corp. v. Littleton (In re Littleton)*, 220 B.R. 710, 715 (Bankr.M.D.Ga.1998); *In re Fitch*, 217 B.R. 286, 290 (Bankr.S.D.Cal. 1998); *Mattheiss v. Title Loan Express (In re Mattheiss)*, 214 B.R. 20, 32 (Bankr. N.D.Ala.1997); *Turner v. DeKalb Bank (In re Turner)*, 209 B.R. 558, 562 (Bankr. N.D.Ala.1997); *In re Sharon*, 200 B.R. 181, 187 (Bankr.S.D.Ohio 1996); *In re Pluta*, 200 B.R. 740, 744 (Bankr.D.Mass.1996); *In re Young*, 193 B.R. 620, 621 (Bankr.D.D.C. 1996); *Karr v. General Motors Acceptance Corp. (In re Karr)*, 129 B.R. 498, 502 (Bankr. S.D.Ohio 1991); *Leverette v. NCNB South Carolina (In re Leverette)*, 118 B.R. 407, 409 (Bankr.D.S.C.1990); *In re Bingham*, 116 B.R. 541, 543 (Bankr.N.D.Ohio 1990); *Wallace v. G.M.A.C. (In re Wallace)*, 102 B.R. 114, 116 (Bankr.S.D.Ohio 1989). *See also Pileckas v. Marcucio*, 156 B.R. 721, 725 (N.D.N.Y.1993) (vehicle part of estate where creditor had failed to perfect its security interest).

In addition, in cases where the issue litigated is whether a creditor has violated the automatic stay by refusing to turn over a vehicle repossessed prepetition, courts have observed that the vehicle is property of the estate. *See General Motors Acceptance Corp. v. Ryan*, 183 B.R. 288 (M.D.Fla.1995); *Carr v. Security Sav. & Loan Ass'n*, 130 B.R. 434 (D.N.J.1991); *Massey v. Chrysler Financial Corp. (In re Massey)*, 210 B.R. 693 (Bankr.D.Md.1997); *Brown v. Joe Addison, Inc. (In re Brown)*, 210 B.R. 878 (Bankr. S.D.Ga.1997); *Brooks v. World Omni (In re Brooks)*, 207 B.R. 738 (Bankr.N.D.Fla.1997); *Deiss v. Southwest Recovery, U.S. (In re Deiss)*, 166 B.R. 92 (Bankr.S.D.Tex.1994); *In re Richardson*, 135 B.R. 256 (Bankr.E.D.Tex. 1992). Under the Uniform Commercial Code ("UCC") as adopted in most states, after repossession, the debtor's interest in the vehicle is a right to redeem the vehicle.[3]

Where a bankruptcy court orders that a secured creditor turn over a repossessed vehicle, a Chapter 13 debtor may modify the rights of a secured creditor through the terms of its Chapter 13 plan. *See, e.g., In re Sharon*, 200 B.R. at 198–99 (discussing §§ 1322 and 1325). Notably, though, the Eleventh Circuit has recently reached a contrary result in a decision under Alabama law. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280, 1283

---

3. Section 9–503 of the Illinois UCC provides that "unless otherwise agreed a secured party has on default the right to take possession of the collateral." 810 ILCS 5/9–503. Pursuant to UCC § 9–504, the secured party also has the right to dispose of collateral after default. 810 ILCS 5/904.

UCC § 9–506 provides in the following terms for a debtor's right to redeem repossessed collateral:

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9–504 or before the obligation has been discharged under Section 9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

810 ILCS 5/906.

(11th Cir.1998).[4] As discussed below, *Lewis* reaches its result by finding that a right of redemption is not a sufficient property interest to warrant turnover of a repossessed vehicle.

In *Lewis,* the secured creditor argued that upon default, title and the right to possess a debtor's automobile pass to the creditor. The Eleventh Circuit upheld the district court's decision in favor of the creditor, finding that at the commencement of his Chapter 13 case, the debtor "did not retain title, possession or any other functionally equivalent ownership interest in the repossessed automobile." *Id.* at 1284. *Lewis* found that in order to "change the [debtor's] otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest," the trustee would have to tender "fulfillment of all obligations secured by the collateral" as well as the expenses required to exercise the estate's right of redemption. *Id.* (citing Ala. Code § 7–6–506). Since the debtor's plan proposed to pay only 62 cents on the dollar in return for his use of the automobile, *Lewis* concluded that the estate had not chosen to exercise its right of redemption and the debtor's request for turnover under § 542(a) was denied.

FMCC argues that *Lewis* should control in this case, and that turnover should be denied because plaintiff's Chapter 13 plan does not provide FMCC with the amounts it would receive in a redemption pursuant to the Illinois UCC. For the reasons explained below, this court disagrees.

The linchpin of the creditor's argument in *Lewis* was that, after default, a creditor acquires title to a repossessed automobile, as well as the right to possession provided by the UCC. *Id.* at 1283–84. To find where title lay, *Lewis* looked to Alabama common law, and decisions finding that a debtor must have both title to and possession of a property in order to maintain an action for conversion of that property. *Id. Thompson v. Ford Motor Credit Co.,* 550 F.2d 256 (5th Cir.1977); *American Nat'l Bank & Trust Co. of Mobile v. Robertson,* 384 So.2d 1122 (Ala.Civ.App. 1980); *Pierce v. Ford Motor Credit Co.,* 373 So.2d 1113 (Ala.Civ.App.1979). *See also Huntsville Golf Dev., Inc. v. Ratcliff, Inc.,* 646 So.2d 1334 (Ala.1994) (action against assignee of debtor's secured creditor). From the fact that Alabama courts would not allow a debtor to sue its secured creditor for conversion of repossessed collateral, *Lewis* made a judgment that the debtor's rights were not meaningful.

This court has looked to Illinois law discussing the nature of a debtor's property interest in a repossessed vehicle. As under the Alabama cases, the Illinois Appellate Court has found that legal title to property subject to a security interest passes to a secured creditor after it takes possession following default. *Kouba v. East Joliet Bank,* 135 Ill.App.3d 264, 268, 481 N.E.2d 325, 329, 89 Ill.Dec. 774, 778 (3rd Dist.1985). In contrast to the conclusion in *Lewis,* however, *Kouba* found that the debtors before it had rights under Illinois law that erode a common law creditor's claim to absolute title. *Id.* Having concluded that the debtors retained significant rights and responsibilities with respect to the creditor's collateral after default, *Kouba* held that the debtors had standing to maintain an action against a third party that negligently damaged the vehicle after default and repossession. *Id.,* 135 Ill. App.3d at 269, 481 N.E.2d at 329, 89 Ill. Dec. at 778.[5]

---

**4.** *Lewis* was decided on March 25, 1998. To date, one Alabama bankruptcy court has followed its holding. *Warren v. SouthTrust Bank, N.A. (In re Warren),* 221 B.R. 843 (Bankr. N.D.Ala.1998). *Warren* found that because a debtor's Chapter 13 plan failed to comply with the requirements for redemption under the Alabama UCC, her repossessed automobile was not property of her bankruptcy estate. *Id.* at 848–49. Accordingly, *Warren* concluded that § 542(a), by its terms, did not mandate return of the automobile.

**5.** *Kouba* addressed a situation in which joint debtors complained of injuries sustained when individuals hired by their secured creditor repossessed a truck. Ultimately, the truck was destroyed by a fire at the garage where it was stored. In concluding that the debtors had standing to sue the garage owner for negligence, *Kouba* found that the debtors had the following rights and responsibilities with respect to the collateral: (1) a right to an accounting for surplus proceeds of the collateral; (2) a right to redeem the collateral by tendering fulfillment of all obligations secured by the collateral plus the

*Whiting Pools* instructs that § 542(a) is among sections of the Code that bring into the bankruptcy estate property in which the debtor did not have a possessory interest at the time bankruptcy proceedings commenced. *Whiting Pools,* 462 U.S. at 205, 103 S.Ct. at 2313–14. For example, the Court noted that a debtor's interest in property seized prepetition by the Internal Revenue Service—specifically, rights to notice and the surplus from a tax sale—are already part of the estate by virtue of § 541(a)(1). *Id.* at 207, 103 S.Ct. 2309 at n. 15. Because § 542(a) grants a trustee or debtor in possession greater rights than those held by the debtor on the date of its petition, though, the seized property in its entirety may be recovered as part of the bankruptcy estate. *See id.,* 462 U.S. at 208–09, 103 S.Ct. at 2315. Also, the Court explicitly referred to a creditor's right of repossession under UCC § 9–503 in its discussion of the proposition that § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens. *Id.* 462 U.S. at 206 & n. 14, 103 S.Ct. at 2314 & n. 14.

■ This court believes that the situation presented in this case falls squarely within *Whiting Pools'* conclusion that until a sale is taken place, property seized prepetition pursuant to a creditor's provisional remedy remains property of the estate, and as such, is subject to the turnover requirement of § 542(a). *Id.,* 462 U.S. at 211, 103 S.Ct. at 2316–17. Also, bearing in mind that Kouba finds the property interest to be a significant one, the court concludes that *Lewis* is inapposite here. The court having previously determined that FMCC's interest in plaintiff's vehicle is adequately protected, plaintiff's motion for turnover is granted.

### (2) Question Whether FMCC Violated the Automatic Stay

■ Any action taken by a creditor for the purpose of collecting a prepetition debt violates the automatic stay if it amounts to pressure on the debtor to pay. *Divane v. A and C Electric Co., Inc.,* 193 B.R. 856, 859 (N.D.Ill.), *appeal dismissed,* 105 F.3d 660 (7th Cir.1996). Under § 362(h), "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). If it is determined that a party has willfully violated the automatic stay, the award under § 362(h) is mandatory, rather than discretionary. *Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.),* 186 B.R. 414, 437 (N.D.Ill.1995).

Plaintiff takes the position that in refusing to turn over the vehicle upon her attorney's request, FMCC violated the prohibition under § 362(a)(3) of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." She does not contend that FMCC took steps to sell the vehicle after she filed her Chapter 13 petition. Thus, the alleged violation of the stay would consist of inaction, rather than the kind of affirmative action that a claim under § 362(h) commonly calls to mind.[6]

There are two lines of authority on the question whether a creditor violates the stay by refusing to turn over a debtor's vehicle that it has repossessed prior to the filing of a petition in bankruptcy. As discussed in the paragraphs that follow, the critical question is whether turnover can be ordered before findings as to adequate protection are made.

A number of courts have determined that upon a debtor's informal request for return of its vehicle, a secured creditor must turn it over to the debtor. *E.g., Ryan,* 183 B.R. at 289; *In re Sharon,* 200 B.R. at 191; *In re Brooks,* 207 B.R. at 741; *Carr,* 130 B.R. at 438. As part of their analysis, these deci-

---

creditor's reasonable expenses; (3) an insurable interest in the collateral; and (4) a duty, while the collateral was in the possession of the secured party, to bear the risk of accidental loss or damage to the extent of any deficiency in insurance coverage. *Kouba,* 135 Ill.App.3d at 268–69, 481 N.E.2d at 329, 89 Ill.Dec. at 778.

**6.** At the June 11, 1998 hearing, the parties argued as to whether FMCC violated the stay in refusing to turn over the vehicle after plaintiff filed her Chapter 13 case. Because the topic was not addressed, this opinion does not address whether any subsequent actions (or inaction) by FMCC would violate the automatic stay.

sions reason that a debtor should not have to move for turnover to recover from recalcitrant creditors, and that the creditor can move to modify the automatic stay if its interest is not adequately protected. *E.g., Ryan,* 183 B.R. at 289. The following passage from the Eighth Circuit's decision in *Knaus v. Concordia Lumber Co. (In re Knaus),* 889 F.2d 773 (8th Cir.1989), has been cited in support of such result:

> The principle is simply this: that a person holding property of a debtor who files bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7 proceedings.) Otherwise, if persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced. The general creditors, for whose benefit the return of property is sought, would have needlessly to bear the cost of its return. And those who unjustly retain possession of such property might do so with impunity.

*Id.* at 775.

The countervailing position, which appears to be finding increasing support, is that a creditor need not turn over its collateral until adequate protection has been provided. *See, e.g., In re Fitch,* 217 B.R. at 290–91; *In re Massey,* 210 B.R. at 696; *In re Deiss,* 166 B.R. at 94; *In re Richardson,* 135 B.R. at 260. *See also In re Brown,* 210 B.R. at 883 (reaching same result, although concluding that debtor's right to recover property arises under § 1306, rather than § 542(a)).[7] As these decisions interpret the law, § 362(a)(3) reaches only postpetition affirmative actions to take control of a debtor's property. *E.g., In re Richardson,* 135 B.R. at 259. The passive act of continuing to possess property

does not fall within the prohibition under § 362(h). *In re Young,* 193 B.R. at 625. If a vehicle has been lawfully repossessed prepetition, the creditor had a right to possess the vehicle on the date the debtor filed for bankruptcy. *In re Fitch,* 217 B.R. at 288. Since the purpose of the automatic stay is to maintain the status quo that existed on the date of a debtor's bankruptcy filing, the creditor should not have to turn over the vehicle absent assurance that its prepetition position will be protected. *Id.* at 291.

The often-cited decision in *Young* comments that if § 362(a)(3) were interpreted as requiring immediate turnover, it would represent a dramatic shift from the pre-Code practice of allowing secured creditors to retain repossessed collateral until adequate protection was provided by the debtor. *In re Young,* 193 B.R. at 626. Importantly, too, it would contravene the statutory scheme under §§ 363(e) and 542(a) to find that a creditor has an affirmative duty to turn over collateral repossessed prior to bankruptcy.

> ... § 542(a) also limits turnover to property that can be used under § 363. Under § 363(e) the creditor can obtain an order prohibiting a proposed use of the property unless the estate provides adequate protection. This constitutes a significant defense to the grant of a turnover order under § 542(a). The defense would be abrogated by an interpretation of § 362(a)(3) requiring turnover without permitting invocation of the defense.

Such an approach is contrary to the logical interaction of §§ 363(e) and 542(a). The burden is on the trustee, when the issue is raised, to prove adequate protection. 11 U.S.C. § 363 (*o* )(1). Logically, therefore, the creditor should be entitled to hold onto the property during the pendency of the § 542 action until the adequate protection question is resolved. The obvious rationale implicit in permitting the secured creditor to retain possession of the seized property while opposing turnover under § 542(a) is that the creditor may

---

**7.** Within the Seventh Circuit, it appears that only one bankruptcy court has addressed the issue. *Gouveia v. Internal Revenue Service (In re Quality Health Care),* 215 B.R. 543 (Bankr.N.D.Ind.

1997). *Quality Health Care* rejects the reasoning of that line of cases that would require immediate turnover of property rightfully seized prepetition. *Id.* at 573–58.

suffer the very harm that adequate protection is designed to avoid if the property is turned over to the trustee before the trustee proves that the creditor is being given the adequate protection to which it is entitled.

*Id.* at 625.

█ Looking to the facts presented here, at the commencement of this case, FMCC justifiably had doubts as to plaintiff's ability to provide adequate protection, as she had previously failed to fund another Chapter 13 plan that contained substantially the same terms as the plan that has been confirmed in this case. FMCC brought a motion to modify the stay within several weeks of the petition, and there was no apparent obstacle to the bringing of an adversary proceeding for turnover had plaintiff chosen to do so. Taking these considerations into account, the court concludes that FMCC did not violate the automatic stay in refusing to voluntarily surrender plaintiff's vehicle to her at the commencement of this case. Accordingly, plaintiff's motion for sanctions is denied.

### Conclusion

For the reasons set forth below, plaintiff's motion for turnover is granted. Upon the entry of a two-month default order, FMCC shall be obliged to return plaintiff's vehicle to her. Plaintiff will be required to make provision for FMCC's repossession costs in her Chapter 13 plan. Plaintiff's motion for sanctions for violating the automatic stay is denied.