In re Sherron Lynnette
**CEPERO, Debtor.**

**Bankruptcy No. 98–52865.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Oct. 9, 1998.

---

Marshall D. Cohen, Columbus, Ohio, for debtor.

Waymon B. McLeskey II, Columbus, Ohio, for Auto Lenders Acceptance Corp.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

## ORDER ON MOTION FOR VIOLATION OF THE AUTOMATIC STAY

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

The matter is before the Court on the "Motion for Order Holding in Contempt, ALAC for Violation of the Automatic Stay of Bankruptcy Code § 362" filed by Debtor Sherron L. Cepero ("Debtor"). By her Motion, Debtor requests that the Court hold Auto Lenders Acceptance Corporation ("ALAC") in contempt for violating the automatic stay, and that Debtor be awarded damages for actual pecuniary loss, legal fees and punitive damages.

This Court is vested with jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### I. *Findings of Fact*

The facts with respect to this proceeding are not in dispute. Debtor filed her petition for relief under Chapter 13 of the Bankruptcy Code on March 24, 1998. Debtor listed ALAC on her Schedule of Creditors Holding Secured Claims, indicating that ALAC's claim was fully secured by a 1993 Honda Accord ("the Accord"), and was two months in arrears. The Accord had been repossessed by or on behalf of ALAC prior to the filing of this bankruptcy proceeding, and a "Repossession Certificate of Title" was issued showing ALAC as the owner of the Accord on or about March 16, 1998. Debtors had received a notice of repossession and intent to sell the Accord, listing a proposed sale date of March 27, 1998, at Ohio Auto Auction. Debtor attempted to contact representatives of ALAC by telephone with regard to the repossession, and testified that she had called Joe Carter, a representative of ALAC, to advise him of her bankruptcy filing. ALAC did not return Debtor's telephone call regarding the bankruptcy filing. Debtor testified that personal property with a value of approximately $142.00, in addition to a family bible were in the Accord at the time of its repossession, and had not been returned to Debtor as of the time of the June 15, 1998 hearing.

ALAC was further notified of Debtor's bankruptcy filing by Kelly Story, a legal assistant in the offices of Debtor's counsel. Ms. Story called ALAC on March 24, 1998, and left a voice mail message for Joe Carter, the representative of ALAC responsible for handling repossessions. The March 24, 1998 message for Mr. Carter advised him of the relevant vehicle, the bankruptcy filing and information, that the vehicle was due to be sold on March 27, 1998, and that the sale needed to be stopped. Ms. Story again called Mr. Carter of ALAC on March 25, 1998, and left a similar message since she had not received a return telephone call from a representative of ALAC, and again identified herself, the account number for the vehicle, the bankruptcy case number, the date the Accord was due to be sold, and that the sale needed to be stopped. Ms. Story again called Mr. Carter of ALAC on March 26, 1998, and left another message providing the same information, and requested a telecopier number to allow her to provide ALAC with proof that the Accord was insured, hoping that would prompt a return call. Ms. Story again telephoned Mr. Carter of ALAC on March 27, 1998, and again provided the information regarding the bankruptcy filing and proposed sale of the Accord.

Ms. Story called Joe Carter on March 30, 1998, and finally spoke with him at that time.

Mr. Carter informed Ms. Story that all telephone calls had been forwarded to Nikki Drew, the representative of ALAC who was responsible for bankruptcy filings. Neither Debtor nor her counsel sent any written documentation to ALAC regarding the bankruptcy, and need to stop the sale of the Accord. The Court notice of this bankruptcy filing was not sent to creditors until on or after the date of the sale of the Accord.

Nikki Drew of ALAC testified that the Accord had been repossessed on March 4, 1998, and that the repossession title showing ALAC as the owner was issued on March 16, 1998. Ms. Drew stated that ALAC's policy for bankruptcy filings is to send an e-mail message and to leave a voice mail message to the auction specialists in ALAC to hold the vehicle until further notice. Ms. Drew testified that Ms. Story's voice mail messages were forwarded to her by Mr. Carter when Ms. Drew's supervisor was out of town, and her responsibilities were far more than normal. Ms. Drew confirmed that she received two of the messages forwarded from Mr. Carter, and that she had checked her messages on March 27, 1998. By the time Ms. Story spoke with Ms. Drew on March 30, 1998, the Accord had been sold, and ALAC was not able to recover the vehicle. Ms. Drew confirmed that in her telephone call with Ms. Story on March 30, 1998, Ms. Drew stated that the sale of the vehicle was her fault since she had not received the voice mail messages in time to stop the sale.

## II. Conclusions of Law

11 U.S.C. § 362(h) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

■ ALAC argues that damages should not be assessed under 11 U.S.C. § 362(h) inasmuch as there has been no demonstration of a willful violation of the automatic stay by the ALAC. In support of this contention, ALAC argues that the vehicle was repossessed prior to the bankruptcy filing, the repossession title was issued prior to the bankruptcy filing, and although the sale of the vehicle occurred subsequent to the bankruptcy filing, ALAC did not have adequate or actual knowledge of the bankruptcy filing at the time the vehicle was sold. ALAC repeatedly argues that the movant has a burden of proof by "clear and convincing evidence" as to the purported willful violation of the automatic stay. Initially, this Court does not believe that the "clear and convincing evidence" standard is applicable, and finds that the movant must prove violations of the automatic stay by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *In re Sharon*, 200 B.R. 181, 200 (Bankr.S.D.Ohio 1996); *In re Meis–Nachtrab*, 190 B.R. 302, 305 (Bankr.N.D.Ohio 1995); and *In re Estep*, 173 B.R. 126, 128 (Bankr.N.D.Ohio 1994).

■ Despite the fact that the Accord was repossessed, and a repossession certificate of title was issued prior to Debtor's bankruptcy filing, there is no question that Debtor's equitable right of redemption in the Accord became property of the bankruptcy estate pursuant to 11 U.S.C. § 541. *National City Bank v. Elliott (In re Elliott)*, 214 B.R. 148 (6th Cir. BAP 1997). Despite the lawful prepetition repossession, ALAC violated the automatic stay of § 362(a)(3) by maintaining possession of the Accord after receiving notice of the bankruptcy filing. *In re Knaus*, 889 F.2d 773, 774 (8th Cir.1989); *Sharon*, 200 B.R. at 187; *In re Putnam*, 167 B.R. 737, 740 (Bankr.D.N.H.1994). As such, this Court would have been justified in ordering ALAC to turn over possession of the Accord to Debtor. *Knaus*, 889 F.2d at 775. Holding the Accord after receiving notice of this bankruptcy filing, and the sale of the Accord subsequent to the filing of this bankruptcy proceeding actually constituted multiple violations of the automatic stay delineated by 11 U.S.C. § 362(a)(3). The only issue that requires further discussion is whether the violations of the automatic stay by ALAC were "willful."

■ Prior to the sale of a motor vehicle, the debtor would have statutory redemption rights under O.R.C. § 1309.49. Further, "the first secured party holding repossession title

is not the unrestricted 'owner' as contemplated under the provisions of [O.R.C. 4505.10(A) ]." *Elliott,* 214 B.R. at 151. The repeated efforts by the office of Debtor's counsel to provide notice of the bankruptcy to ALAC, in a clear effort to stop the sale of the Accord was sufficient to establish ALAC's notice of Debtor's bankruptcy filing. ALAC cites *Brockington v. Citizens & Southern National Bank of South Carolina (In re Brockington),* 129 B.R. 68 (Bankr. D.S.C.1991) as providing an appropriate definition of a willful violation of the automatic stay. The *Brockington* court stated that a willful violation of the automatic stay "does not require a specific intent to violate the automatic stay. Rather the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *Brockington,* 129 B.R. at 70 (citations omitted). *See also, Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir.1993); *In re Diviney,* 211 B.R. 951, 966 (Bankr.N.D.Okla.1997); and *Frazier, infra.* The *Brockington* court went on to state that "disbelief of a debtor's filing because his or her statement is unaccompanied by other proof or corroboration is no defense to a willful violation of the stay." *Brockington,* 129 B.R. at 70. Upon receiving verbal notice of a bankruptcy filing, a creditor must act accordingly. "The prudent policy is to temporarily stop, confirm, then proceed if authorized ..." *Brockington,* 129 B.R. at 70.

There is no basis to assert that the notice to ALAC of Debtor's bankruptcy filing was insufficient because it was provided telephonically. In light of the proximity of the proposed auction sale of the Accord to the date of the bankruptcy filing, this Court finds that sufficient notice of the bankruptcy filing was provided to ALAC from the office of Debtor's counsel. The argument that the violation of the automatic stay was not willful since Ms. Drew was too busy to check her messages in a timely manner is spurious, and offensive to the Court. Notice of this bankruptcy filing was adequately provided when the legal assistant in the office of Debtor's counsel left telephone messages for the representative of ALAC identified as being responsible for repossessions. The telephonic notification from the office of Debtor's counsel was sufficient to provide ALAC with actual notice of the bankruptcy filing, despite the fact that it had not received written verification of the filing. ALAC's failure to take timely actions to stop the sale of the Accord, and the sale of that vehicle constitute willful actions that were in violation of the automatic stay despite actual notice that the bankruptcy action had been filed.

Debtor has satisfied her burden of proving the willful violation by a preponderance of the evidence, and in fact, under these extreme circumstances, the Court would have found that the "clear and convincing evidence" standard had also been met. Joseph Carter received actual notice of the bankruptcy filing prior to the sale of the Accord. Joseph Carter forwarded the messages regarding the bankruptcy filing to Nikki Drew, ALAC's bankruptcy specialist, prior to the sale of the Accord. It is outrageous and offensive for ALAC to argue that it did not have adequate notice of the bankruptcy filing based on Ms. Drew's busy schedule, and failure to retrieve her telephone messages prior to the sale of the vehicle. This Court believes that ALAC, if it had acted with prudence, could have either stopped the sale, or unwound the transaction if necessary. Clearly, under the facts presented, there has been a willful violation of the automatic stay with actual injury to Debtor, and sanctions are appropriate under 11 U.S.C. § 362(h). *Archer v. Macomb County Bank,* 853 F.2d 497, 499–500 (6th Cir.1988).

This case has similarities to *In re Frazier,* 220 B.R. 476 (D.Utah 1998). In *Frazier,* a creditor secured by an automobile repossessed the automobile after the filing of the debtor's chapter 7 bankruptcy petition. As in the case currently before the Court, the debtors in *Frazier* gave verbal notice of the bankruptcy filing to the creditor, and despite the fact that the debtors did not attempt to retrieve the automobile after its repossession, the creditor sold the automobile at a private auction after approximately 60 days. The bankruptcy court in *Frazier* determined that the market value of the vehicle was $3,400.00, but the creditor was owed more

than that amount, and awarded damages in the amount of $1.00, plus attorney's fees in the amount of $1,500.00, and punitive damages against the creditor in the amount of $20,000.00. In some respects, this case is more egregious than *Frazier* since the debtor here made repeated efforts, through the legal assistant at her counsel's office, to recover the Accord prior to its sale. With respect to the loss of the Accord, Debtor scheduled its value at $14,920.00 with an identical claim amount. While Debtor did not lose any equity in the Accord, she clearly was deprived of the use of the vehicle, and the existence of the financing for that vehicle. In light of the chapter 7 bankruptcy filing, Debtor's ability to obtain similar financing for a replacement automobile is hampered.

■ At this Court's request, Debtor submitted an itemization of damages which was filed with the Court on June 22, 1998. The Court has reviewed that itemization as well as the objection filed by ALAC. With respect to Debtor's actual damages, this Court concurs with ALAC's objections in several respects. Debtor has submitted no evidence that would substantiate payment of an hourly rate to Kay McAfee for providing transportation to Debtor, and many of the requested expenses appear to be outside of the scope of a proper damages award. This Court finds that ALAC must compensate Debtor for actual damages including the entire storage fee paid to Mid–Ohio Recovery Group in the amount of $111.00, the mileage expense for the round trip involved in recovering her personal property in the amount of $6.40, and attorney's fees in the amount of $1,177.50 for Marshal D. Cohen, and legal assistant fees in the amount of $300.00 for John Vogel, and $237.50 for Kelly Story. Under the circumstances of this case, and the need for counsel to have acquired all information from his legal assistants involved in this proceeding, the Court finds it appropriate to compensate for the entire amount requested despite approximately 1.5 hours of billed time for conferences involving two individuals from counsel's firm regarding this proceeding.

■ In light of the sale of the Accord, and the inability or unwillingness of ALAC to unwind the sale transaction, this Court finds that punitive damages are necessary to punish ALAC, and deter it from future violations of the automatic stay, and to properly encourage ALAC to institute procedures that will avoid future violations. Punitive damages are appropriate in light of the egregious, intentional conduct by ALAC. *United States v. Ketelsen (In re Ketelsen),* 880 F.2d 990, 993 (8th Cir.1989). In her schedules, Debtor placed a value of $14,920.00 on the Accord, with an identical claim amount, resulting in a lack of equity. Debtor also scheduled a 1990 Chrysler LeBaron motor vehicle, owned free and clear with a market value of $2,000.00. There is no specific rule governing the appropriate or allowable amount of punitive damages, although some guidance is provided to the Court by the case of *BMW of North America v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Under *Gore,* the Court must verify that the conduct occurred in the state imposing the sanctions; that the defendant receives fair notice of the conduct providing a basis for punitive damages; and that the defendant receives fair notice of the potential severity of the penalty. However, the appropriate level of punitive damages is a fact intensive inquiry, and it would be improper to set a mathematical formula for the determination of an appropriate level of damages. *Gore,* 517 U.S. at 582, 116 S.Ct. 1589.

■ Debtor was clearly damaged by the actions of ALAC, resulting in Debtor's loss of the use of the Accord. The scheduled value of the Accord was $14,920, although Ms. Drew of ALAC testified that the value of the Accord would have been between $10,000.00 and $11,000.00 at the time this bankruptcy case was filed. Given the reprehensible nature of ALAC's actions, their clear disregard for the bankruptcy proceeding, their wholly inadequate procedures for dealing with notice of a bankruptcy filing, and stopping postpetition sales of vehicles after receiving notice of a bankruptcy filing, the Court finds that punitive damages shall be, and hereby are assessed against ALAC in the amount of $12,000.00. This damage award falls within the "guidelines" set forth in *Gore,* and is appropriate under the totality of circumstances, and unique facts of this case. Debt-

or's Motion to hold ALAC in contempt, and the Court's Order to Show Cause issued in response to Debtor's motion gave ALAC fair notice of the conduct that subjected it to punitive damages, as well as notice of the potential severity of the penalty. It is surprising to the Court that such an egregious case was brought to trial.

■ The actual damage award in the amount of $1,832.40, and the punitive damage award in the amount of $12,000.00 shall be paid by ALAC to counsel for Debtor within twenty (20) days of entry of this Order. If ALAC fails to provide Debtor's counsel with payment of this award within the time frame set forth herein, ALAC shall be further penalized in the amount of $1,000.00 per day until the entire award is paid in full. Counsel for Debtor shall maintain the portion of the actual damage award to compensate for attorney and legal assistant fees, and shall forward the additional actual damage award to Debtor. In addition, ALAC shall not be allowed to assert any claim against Debtor, nor shall it otherwise be allowed to pursue Debtor or any co-debtor that may exist for the loan relating to the purchase of the Accord. Counsel for Debtor shall distribute $8,000.00 of the punitive damage award to Debtor, and shall distribute the remaining punitive damage award to the Chapter 13 Trustee to be paid as an additional dividend to unsecured creditors, and to compensate Debtor's counsel for additional fees incurred to modify Debtor's plan accordingly.

**IT IS SO ORDERED.**