**In re W. Kerry JACKSON, Debtor.**

**No. 99–33070 GEC.**

United States Bankruptcy Court, D. Utah.

July 21, 2000.

W Kerry Jackson, West Jordan, UT.

William Thomas Thurman, Gregory J Adams, McKay Burton & Thurman, Salt Lake City, UT.

Mark Swan, Richer Swan & Overholt PC, Midvale, UT.

Gale K. Francis, Assistant Attorney General, Salt Lake City, UT.

Kevin R Anderson, Standing Chapter 13 Trustee (via box in Clerk's Office).

## ORDER AWARDING SANCTIONS

GLEN E. CLARK, Chief Judge.

This matter came on for an Order to Show Cause Why the Utah Labor Commission, Industrial Accidents Division, and Richer, Swan & Overholt P.C. Should Not Be Sanctioned for Willful Violation of the Automatic Stay before the Honorable Glen E. Clark, Chief Judge, United States Bankruptcy Court, on May 11, 2000. William Thomas Thurman and Gregory J. Adams appeared on behalf of Richer, Swan & Overholt. Gale K. Francis appeared on behalf of the Utah Labor Commission, Industrial Accidents Division. W. Kerry Jackson appeared pro se.

W. Kerry Jackson (the "Debtor") is a self employed businessman involved in computer sales and repair. During the winter months, the Debtor augments his income by using his 1988 Jeep Cherokee (the "vehicle") to plow snow. On or around May 4, 1998, the Utah State Labor Commission ("Labor Commission") docketed an order determining that the Debtor was liable to the Labor Commission for a penalty in the amount of $8,395.85 for unpaid workman's compensation insurance. The Labor Commission engaged the services of Richer, Swan & Overholt, P.C. ("RS & O") to enforce the judgment and essentially relinquished control of the matter to RS & O.[1] By November 18, 1999, a writ of execution on the Debtor's vehicle had been obtained, the vehicle was seized, and a sale was set for December 3, 1999. On December 3, 1999, the Debtor filed a voluntary petition under Chapter 13 and notified RS & O of the filing. RS & O canceled the sale but did not return possession of the vehicle to the Debtor.

On December 30, 1999, the Debtor mailed RS & O a letter requesting return of the vehicle stating that it was needed for Debtor's work, and that if the return was delayed, sanctions may be sought in court against RS & O and the Labor Commission. RS & O responded by letter dated January 4, 2000, stating that before the vehicle would be returned, the Debtor would first have to provide proof of insurance on the vehicle and agree to provide monthly adequate protection payments to the Labor Commission.

On February 9, 2000, the Debtor mailed a second letter to RS & O requesting release of the vehicle as soon as possible, indicating that the Debtor was not able to work without it. The letter contained a copy of a vehicle insurance application with

---

1. According to affidavits of the Labor Commission, once the matter was referred to RS & O, no direct supervision of the case by the Labor Commission occurred. RS & O advised the Labor Commission as to what happened in the bankruptcy proceeding, but only after the fact. The Labor Commission did not direct the decision regarding the Debtor's vehicle. These statements are consistent with the information contained in Debtor's response to the show cause order and the statements are not contested by RS & O.

a $1,000 deductible. RS & O responded by letter dated February 14, 2000, indicating that the deductible must be in the amount of $250. The letter also contained a Stipulation and Order for Adequate Protection and Treatment of Claim setting forth "acceptable" treatment of the Labor Commission's debt through Debtor's Chapter 13 proceeding. The February 14 letter, in closing, states: "Once we have received proof of insurance which adequately protects the Utah Labor Commission, and upon return of this signed Stipulation and Order which modifies the Plan regarding the possessory lien claim, we will instruct our client to immediately release the vehicle to you." The Debtor did not respond to RS & O's letter of February 14, 2000, and RS & O filed a Motion for Relief from the Automatic Stay as to the vehicle with a hearing set for April 5, 2000.

At the hearing of April 5, 2000, the court denied the Motion for Relief from the Automatic Stay and ordered RS & O and the Labor Commission to show cause why they should not be sanctioned for a willful violation of the automatic stay based upon the refusal to return the Debtor's vehicle after being advised of the bankruptcy.

## ANALYSIS

1. *Turnover of Property to the Estate.*

Section 542(a) requires any entity in possession, custody, or control of property of the estate to turn over possession of the property. "Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983). The Court goes on to state that: "In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings." *Whiting Pools,* at 2314–15.

■ Decisions interpreting *Whiting Pools* and § 542(a) uniformly agree that § 542(a) requires the turnover of debtor's property by secured creditors. *Whiting Pools* is dispositive on the issue of whether the debtor's right to turnover prevails over the interests acquired by a creditor's prepetition levy. *In re Challenge Air International,* 952 F.2d 384, 386 (11th Cir.1992). The Bankruptcy Code replaces a creditor's right to possession with other rights, such as the right to adequate protection. *Matter of Pester Refining Co.,* 845 F.2d 1476 (8th Cir.1988). An entity in possession of the debtor's property is obligated to deliver that property after the bankruptcy is filed. *NLT Computer Services Corp. v. Capital Computer Systems, Inc.,* 755 F.2d 1253 (6th Cir.1985). The duty to turn over estate property is a mandatory duty arising upon the filing of the bankruptcy petition. *In re Del Mission Limited,* 98 F.3d 1147 (9th Cir.1996).

■ A creditor's duty to return a vehicle repossessed prepetition is not dependent on the receipt of adequate protection or proof of insurance. *In re Brooks,* 207 B.R. 738 (Bankr.N.D.Fla.1997); *General Motors Acceptance Corp. v. Ryan,* 183 B.R. 288 (M.D.Fla.1995). Because a creditor has immediate access to court pursuant to § 362(f) and § 363(e) in order to assure that adequate protection is provided, there is no reason for the creditor to delay in the turnover of estate property. This interpretation of § 542 is consistent with *Whiting Pools* at 2313 which places the burden of seeking adequate protection on the creditor:

> At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession.

For a secured creditor to withhold property of the estate until the debtor complies with the creditor's demand for adequate protection permits the creditor to unilaterally determine the amount, type and sufficiency of adequate protection. It is the duty of the court, not the privilege of the creditor, to determine what adequate protection is appropriate.

2. *Violation of the Automatic Stay.*

 The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 355 (the "1984 Amendment") extended the scope of the automatic stay to specifically include any exercise of control over property of the estate. The 1984 Amendment added the second clause of § 362(a)(3) which states: "(3) any act to obtain possession of property of the estate or of property from the estate *or to exercise control over property of the estate;*". In finding that a creditor violated the automatic stay by not returning property after the filing of the bankruptcy petition, the Eighth Circuit in *Knaus v. Concordia Lumber Company, Inc.,* 889 F.2d 773 (8th Cir.1989) states at 775 that:

> The duty to turn over the property is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor. [citations omitted]. Rather, the duty arises upon the filing of the bankruptcy petition. The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to "exercise control over the property of the estate" in violation of the automatic stay.

The 1984 Amendment to § 362(a)(3) "made it clear that post-petition control over estate property is a violation of the stay." *In re Abrams,* 127 B.R. 239, 242 (9th Cir. BAP 1991). "Withholding possession of property from a bankruptcy estate is the essence of 'exercising control' over possession." *In re Sharon,* 234 B.R. 676, 682 (6th Cir. BAP 1999).

Section 542 provides the right to the return of estate property, while § 362(h) provides the remedy for the failure to do so. A creditor's knowing retention of property of the estate constitutes a violation of § 362(a)(3). *Del Mission,* 98 F.3d at 1151 citing *In re Chugach Forest Prod., Inc.,* 23 F.3d 241 (9th Cir.1994). The failure to turn over estate property, whether lawfully seized or not, is the exercise of control over property of the estate in violation of the automatic stay. *In re Carrigg,* 216 B.R. 303 (1st Cir. BAP 1998); *In re Bunton,* 246 B.R. 851 (Bankr.N.D.Ohio 2000); *Carlsen v. IRS,* 63 B.R. 706 (Bankr. C.D.Cal.1986).

A number of courts have found that failure to turn over estate property that was lawfully seized prepetition is a violation of § 363(a)(3). *In re Cepero,* 226 B.R. 595 (Bankr.S.D.Ohio 1998); *In re Berscheit,* 223 B.R. 579 (Bankr.Wyo.1998); *In re Zaber,* 223 B.R. 102 (Bankr.N.D.Tex. 1998); *General Motors Acceptance Corp. v. Ryan,* 183 B.R. 288 (M.D.Fla.1995); *In re Coats,* 168 B.R. 159 (Bankr.S.D.Tex. 1993); *Carr v. Security Sav. & Loan Ass'n,* 130 B.R. 434 (D.N.J.1991). This court, too, finds that withholding possession of estate property that was seized prepetition is an exercise of control over property of the estate that is expressly prohibited by § 362(a)(3) and is a violation the automatic stay.

3. *Damages.*

 Section 362(h) provides that an individual injured by any willful violation of a stay shall recover actual damages, including costs and attorney fees and, in appropriate circumstances, punitive damages. A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded. *In re Diviney,* 225 B.R. 762 (10th Cir. BAP 1998). An award of puni-

tive damages under § 362(h) requires not only a willful violation of the automatic stay, but also a finding of "appropriate circumstances" which has been interpreted to mean "egregious, intentional misconduct on the violator's part." *United States v. Ketelsen*, 880 F.2d 990, 993 (8th Cir.1989). Under the circumstances of this case, the court believes that punitive damages are not necessary to deter similar conduct in the future. At the hearing, the Debtor failed to provide the court with adequate evidence regarding the loss of income and costs that resulted from the violation of the automatic stay.[2] Accordingly, the court must fashion a remedy based upon the evidence that was received at the hearing. RS & O put into evidence the fact that a comparable vehicle would rent for $35 per day. This evidence will be accepted as the best evidence of Debtor's damages resulting from this violation of the automatic stay. RS & O first learned of the Debtor's bankruptcy on December 3, 1999, and returned the vehicle on April 5, 2000 (122 days later), which at $35 per day is $4,270. The court is unaware of any attorney fees or costs that may have been expended by the Debtor. Therefore, it is hereby

ORDERED that RS & O pay to the Debtor within 20 days of this order the sum of $4,270 for willful violation of the automatic stay, and it is further

ORDERED that in the event the Debtor has not been paid in full within 20 days of this order, upon affidavit filed by the Debtor, the court will reconsider its ruling regarding punitive damages.

---

**2.** The court notes that if the court had been provided with credible evidence from the Debtor regarding the financial impact of the loss of use of the vehicle on the Debtor's business, the damage award may have been considerably larger.