**In re Georgina P. MITCHELL,
Debtor/Appellee,**

v.

**BANKILLINOIS, Appellant.**

No. CIV.A. H–02–3834.

United States District Court,
S.D. Texas,
Houston Division.

July 28, 2004.

---

Susan Rae Fuertes, Baker & Hostetler LLP, Houston, TX, for Bank Illinois, Appellant.

Richard W. Aurich, Jr, Attorney at Law, Houston, TX, for Georgina P Mitchell, Debtor.

Georgina P. Mitchell, Houston, TX, pro se.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Appellant BankIllinois financed debtor/appellee Georgina Mitchell's purchase of an automobile in 2000. On March 12, 2002, BankIllinois repossessed Mitchell's vehicle for failure to make payments. Later that same day, Mitchell filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. Mitchell demanded that

BankIllinois return her vehicle, but Bank-Illinois refused. Mitchell filed a Complaint for Turnover and for Damages in the bankruptcy court. The court found that the vehicle was property of the bankruptcy estate under 11 U.S.C. § 542(a) and that BankIllinois had violated the automatic stay imposed under 11 U.S.C. § 362(a)(3) by failing to return the vehicle in response to Mitchell's demand. The court awarded Mitchell $8,520.97 in actual damages and attorney fees under 11 U.S.C. § 362(h). BankIllinois appeals this judgment, arguing that an automobile repossessed prepetition is not property of the estate and that BankIllinois was entitled to hold the vehicle until Mitchell demonstrated that its interest in the vehicle was adequately protected. BankIllinois contends that although Mitchell provided proof of insurance for the automobile, this did not show adequate protection of BankIllinois's interests.

After careful consideration of the parties' submissions and the record on appeal, with the applicable law, this court AFFIRMS the bankruptcy court's ruling. The reasons are set out in detail below.

## I. Background

Mitchell purchased a 1997 Chevrolet Monte Carlo (the "vehicle") on December 5, 2000. BankIllinois financed Mitchell's purchase. BankIllinois repossessed the vehicle on March 12, 2002, after Mitchell failed to make payments. Later that day, Mitchell filed a Chapter 13 bankruptcy petition. Mitchell notified BankIllinois by facsimile of the bankruptcy filing and demanded that BankIllinois return the vehicle. (Debtor's Exs. 5, 6). Mitchell included proof of her insurance on the vehicle in this facsimile. (Debtor's Ex. 6).

The next day, counsel for BankIllinois replied to Mitchell's facsimile. In the reply, counsel stated that its bankruptcy attorney, John Maloney, was away until March 18, but the office would instruct BankIllinois to protect the vehicle until Maloney's return. (Debtor's Ex. 7). BankIllinois's counsel also requested a copy of Mitchell's Chapter 13 plan. (*Id.*).

On March 18, Maloney responded by letter. (Def.'s Ex. 5). Maloney acknowledged receiving Mitchell's proof of insurance. Maloney contended that Mitchell only retained a right of redemption because the repossession occurred prepetition. Maloney stated that BankIllinois wanted to discuss "what arrangements can be made ... that would allow your client to reinstate the loan," and to have "some serious Code Section 362 discussions." Maloney repeated BankIllinois's request for a copy of Mitchell's Chapter 13 plan, but made no reference to a need for additional proof of adequate protection.

In a facsimile sent to BankIllinois's counsel on March 19, Mitchell repeated her demand that BankIllinois return her automobile. (Debtor's Ex. 8). Mitchell also stated that she had lost time at work and was renting a car in order to travel to work. Mitchell stated that she would file an adversary action for turnover of the automobile if BankIllinois did not return the vehicle.

On March 21, Mitchell filed a Complaint for Turnover and Damages in the bankruptcy court. On March 27, BankIllinois filed a motion for relief from the automatic stay of 11 U.S.C. § 362 and for adequate protection. BankIllinois requested that this motion be considered on an emergency basis, but withdrew that request at the hearing on Mitchell's complaint. (Transcript, March 28, 2002, p. 33, 1.19–1.22).

The bankruptcy court held an evidentiary hearing on Mitchell's motion for turnover on March 28, 2002. In that hearing, BankIllinois took the position

that the vehicle was not property of Mitchell's bankruptcy estate and Mitchell had no possessory right in the car because it was repossessed prepetition. (*Id.* at p. 13, 1.16–1.19). The bankruptcy court disagreed. Relying primarily on *United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the bankruptcy court held that the vehicle was property of the estate and subject to turnover despite the fact that it was seized prepetition. (Op. at 5–6). The court found that under Texas law, ownership of collateral remains with the debtor until sale. (*Id.* at 6). Because of this, BankIllinois did not own the repossessed vehicle and the vehicle became property of the estate once Mitchell filed her Chapter 13 bankruptcy petition.

The court ordered BankIllinois to return the vehicle to Mitchell. (*Id.* at p. 34, 1.23–p. 35, 1.11; Op. at 5–7). The court stated that although BankIllinois was entitled to request adequate protection of its interest in the vehicle, BankIllinois did not request adequate protection in its initial correspondence with Mitchell, and only raised the issue of adequate protection six days after Mitchell filed her turnover action. (*Id.* at 6–7). The court concluded that "BankIllinois used possession of the vehicle to coerce [Chapter 13] plan treatment to its liking." (*Id.* at 7). The court found that BankIllinois willfully violated section 362(a)(3) and ordered it to pay $8,520.97 actual damages and attorney fees under section 362(h).[1] The court did not award sanctions or punitive damages.

## II. The Standard of Review

■ In reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal. 28 U.S.C. § 158(a); *In re Webb,* 954 F.2d 1102, 1103–04 (5th Cir. 1992). This court will not set aside a bankruptcy court's findings of fact unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re McDaniel,* 70 F.3d 841, 842–43 (5th Cir.1995). A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred. *In re McDaniel,* 70 F.3d at 843. This court reviews legal conclusions *de novo. Id.; In re Herby's Foods, Inc.,* 2 F.3d 128, 131 (5th Cir.1993).

## III. Analysis

BankIllinois argues that the bankruptcy court erred in concluding that the vehicle was property of the estate. BankIllinois also contends that even if the vehicle was property of the estate, BankIllinois did not violate the automatic stay by refusing to return the vehicle on demand because its interest in the vehicle was not adequately protected. BankIllinois argues that Mitchell's proof of insurance did not constitute adequate protection. BankIllinois also challenges the bankruptcy court's award of attorney fees, contending that the amount was unreasonably high.

Each contention and response is analyzed below.

### A. The Issue of Whether the Vehicle Was Property of the Estate

■ BankIllinois contends that the vehicle was not property of the estate because it was repossessed before Mitchell filed

---

1. The court itemized Mitchell's actual damages and attorney fees as follows:

(1) Missed work: $417
(2) Damage to the vehicle during repossession: $740
(3) Rental car costs: $815.47
(4) Attorney fees: $8,548.50

The court then found that $2,000 of the attorney fees were not related to this litigation and reduced the damages award to $8,520.97.

her Chapter 13 bankruptcy petition. Mitchell responds that under Texas law, she retained ownership of the vehicle after it was repossessed, so that the vehicle became property of the bankruptcy estate once she filed her Chapter 13 petition.

Under 11 U.S.C. § 541(a)(1), a bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 542(a) requires that an entity in possession of property "that the trustee may use, sell, or lease under section 363" must deliver that property to the trustee. The Supreme Court in *Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309 held that if a secured creditor repossesses the debtor's property prepetition, that property may be included in the estate. "[Section] 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings." 462 U.S. at 207, 103 S.Ct. at 2314–15. *Whiting Pools* involved a Chapter 11 proceeding, and the Court reserved the question whether section 542(a) has the same effect in Chapter 13 proceedings. 462 U.S. at 208 n. 17, 103 S.Ct. 2309. However, many courts have applied *Whiting Pools* to Chapter 13 cases. *See In re Robinson*, 285 B.R. 732, 735 (Bankr.W.D.Okla.2002); *In re Sharon*, 234 B.R. 676, 681–82 (6th Cir. BAP 1999); *In re Spears*, 223 B.R. 159, 163 (Bankr.N.D.Ill.1998); *In re Richardson*, 135 B.R. 256, 257 (Bankr.E.D.Tex. 1992); *In re Attinello*, 38 B.R. 609, 610–11 (Bankr.E.D.Pa.1984).

 The *Whiting Pools* Court stated that section 542(a) may not apply if the seizure of the property transferred ownership. Ownership under section 541 is determined under state law. *Butner v. Unit-*

ed States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Thomas*, 883 F.2d 991, 995 (11th Cir.1989); *In re Robinson*, 285 B.R. at 735. Once the debtor's state law property rights are determined, federal bankruptcy law applies to establish the extent to which those rights are property of the estate. *Butner*, 440 U.S. at 55, 99 S.Ct. 914; *In re Thomas*, 883 F.2d at 995; *In re Robinson*, 285 B.R. at 735. This court must decide whether BankIllinois's repossession of the vehicle gave it ownership of the vehicle, or whether Mitchell retained ownership after BankIllinois took possession. This is a question of Texas law.

Under Tex. Bus. & Com. Code § 9.609,[2] a secured party may take possession of collateral after default without judicial process if it proceeds without a breach of the peace. After repossession, a secured party may sell, lease, license, or otherwise dispose of the collateral, so long as it provides the debtor notification before disposition. Tex. Bus. & Com. Code §§ 9.610–9.612. Under Tex. Bus. & Com. Code § 9.617(a), "a secured party's disposition of collateral after default (1) transfers to the transferee for value all of the debtor's rights in the collateral." A secured party can accept the collateral in satisfaction of the debtor's obligation only with the debtor's consent. Tex. Bus. & Com. Code §§ 9.620(a). The secured party receives "all of a debtor's rights in the collateral" only after it accepts the collateral in satisfaction of the obligation. Tex. Bus. & Com. Code § 9.622(a)(2).

Third parties purchasing repossessed collateral from the secured creditor generally require that the certificate of title reflect their ownership. Under Tex. Bus. &

---

**2.** Texas has enacted Article 9 of the Uniform Commercial Code at Tex. Bus. & Com. Code §§ 9.101 *et seq.*

Com. Code §§ 9.619(b), title can be transferred from the *debtor* to the third-party purchaser after the secured creditor disposing of the property prepares a "transfer statement." The transfer statement must state: (1) that the debtor has defaulted on an obligation secured by specific collateral; (2) that the secured party has exercised its post-default remedies with respect to the collateral; (3) that, through the secured creditor's exercise of the right to dispose of the collateral, a transferee has acquired the rights of the debtor in the collateral; and (4) the name and mailing addresses of the secured party, the debtor, and the transferee. Tex. Bus. & Com. Code §§ 9.619(a).

Section 9.619(b) provides:

A transfer statement entitles the transferee to the transfer of record of all rights of the debtor in the collateral specified in the statement in any official filing, recording, registration, or certificate-of-title system covering the collateral.

The "transferee" is the third party purchasing the collateral from the secured party that repossessed it.

Under sections 9.617 and 9.619(b), a third party purchasing the collateral from the secured creditor is entitled to "all of the rights of the debtor" in the collateral. The third-party purchaser obtains more than the right to redeem; it obtains ownership of the collateral. The secured creditor's rights are limited to enforcement of its security interest through disposing of the collateral. All of the debtor's rights in the collateral are transferred to the third-party purchaser when the sale is consummated. The secured party obtains the

debtor's rights in the collateral by accepting the collateral in satisfaction of the debtor's obligation or purchasing the collateral. Tex. Bus. & Com. Code §§ 9.610(c), 9.622(a)(2).[3] In *Comerica Acceptance Corp. v. Dallas Central Appraisal Dist.*, 52 S.W.3d 495, 497 (Tex.App.-Dallas 2001, writ denied), the court interpreted the meaning of the term "owner" under the Texas Tax Code, stating as follows:

Interpreting "owner" to include a secured party in possession of property for purposes of selling it to recover on a debt does not comport with these rules of statutory construction. Simply stated, a lienholder is not an "owner" of the property within the common meaning of that term. Typically the lienholder does not enjoy any of the common benefits of ownership. A lienholder ordinarily has no legal right to share in any accretions to the collateral's value, or a legal obligation to bear any risk of lost value. A lienholder ordinarily has no right to possession or use of the property; what rights it has to use and possession are only in the context of its right to take possession of the collateral upon default and sell it pursuant to the security agreement.

*See also In re Clelland*, 268 B.R. 539, 540 (Bankr.E.D.Ark.2001) (finding that under Texas law debtor retained ownership of an automobile despite having lost possessory rights); *In re Richardson*, 135 B.R. at 257 ("It is beyond dispute that Debtor's automobile, while lawfully repossessed prior to the filing of Debtor's bankruptcy petition, continues to be the property of the estate.").

**3.** Other courts interpreting the same UCC provisions have reached the same conclusion. *See In re Robinson*, 285 B.R. at 736–37 (finding that under Oklahoma law, secured creditor has right to dispose of seized collateral, but if collateral is seized prepetition, secured creditor does not have an ownership right that permits retention of the collateral after debtor files bankruptcy petition).

A debtor's rights in repossessed collateral include the right to notification before the disposition of the collateral, Tex. Bus. & Com. Code §§ 9.611; the right to any surplus from the disposition of the collateral, Tex. Bus. & Com. Code §§ 9.615(d)(1); and the right to redeem the collateral, Tex. Bus. & Com. Code §§ 9.623. These rights are transferred to a third-party purchaser on sale of the collateral. In *U.S. v. Whiting Pools*, 674 F.2d 144, 149–150 and n. 8 (2d Cir.1982), aff'd, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Court held that the debtor's similar rights in property repossessed prepetition made that property belong to the bankruptcy estate. Under *Whiting Pools*, the property rights Mitchell held in the vehicle under Texas law made it property of the estate. "While there are explicit limitations on the reach of § 542(a), none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings." *In re Pluta*, 200 B.R. 740, 743 (Bankr.D.Mass.1996) (citing *Whiting Pools*, 462 U.S. at 205–06, 103 S.Ct. at 2314). The estate had a possessory right in the vehicle under section 542(a).

BankIllinois cites two recent cases, *In re Kalter*, 292 F.3d 1350 (11th Cir.2002) and *In re Lewis*, 137 F.3d 1280 (11th Cir.1998), in support of its argument that the estate had no possessory right to the vehicle because it was seized prepetition. Subsequent cases criticize both these cases. *See In re Robinson*, 285 B.R. at 738 n. 6; *In re Sanders*, 291 B.R. 97, 101 (Bankr. E.D.Mich.2003). Moreover, both decisions are distinguishable from the present case.

The *In re Lewis* court looked in part to the Alabama common law of conversion in determining that an automobile seized prepetition is not the property of the estate. *See* 137 F.3d at 1283–84. Because Mitch-

ell's property rights are based on Texas law, *In re Lewis* is inapposite.

*In re Kalter* stated that the term "debtor," as defined in the Florida UCC, included the owner of the collateral, even if that party was not liable for payment of the secured obligation. The *In re Kalter* court reasoned that the term "debtor" could refer to either the debtor or the creditor in possession of the collateral. 292 F.3d at 1354. The *In re Kalter* court found the language of the Florida UCC insufficient to establish ownership of vehicles repossessed prepetition, and relied on the Florida Certificate of Title statute to determine ownership. The Texas UCC, by contrast, provides sufficient guidance to determine ownership in this case. The Texas UCC defines "debtor" as "a person having an interest, other than a security interest or other lien, in the collateral." Tex. Bus. & Com. Code § 9.102(28). A "secured party" is "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding." Tex. Bus. & Com. Code § 9.102(73). The sections of the Texas UCC regarding disposition of collateral seized after default make it clear that the party seizing the collateral is a secured party and that the defaulting party is the debtor. *See* Tex. Bus. & Com. Code § 9.609–9.624. Because of this, the analysis of the Florida UCC in *In re Kalter* is inapposite. The terms of the Texas UCC are sufficient to determine that Mitchell's vehicle became property of the bankruptcy estate after she filed her bankruptcy petition; this court need not rely on Texas title statutes to determine ownership of the vehicle.

Following *Whiting Pools* and the majority of courts that have considered this question, this court finds that Mitchell's vehicle was property of the bankruptcy

estate, despite the fact that BankIllinois seized it prepetition.

## B. Whether BankIllinois Violated the Automatic Stay

■ BankIllinois contends that it did not violate the section 362 automatic stay by refusing to return the vehicle upon demand. BankIllinois argues that the proof of insurance Mitchell provided was not adequate protection of its interest in the vehicle.

Under section 362(a)(3), the filing of a bankruptcy petition acts as a stay of "any act ... to exercise control over property of the estate." The courts disagree as to whether a creditor violates the automatic stay by refusing to turn over an automobile repossessed before the debtor filed a bankruptcy petition. The majority of courts have held that creditors retaining an automobile repossessed prepetition, after the debtor demands return and tenders adequate protection, violate the section 362(a)(3) automatic stay. *See In re Sharon,* 234 B.R. 676, 681–682 (6th Cir. BAP 1999); *Carr v. Sec. Sav. & Loan Ass'n.,* 130 B.R. 434 (Bankr.D.N.J.1991); *GMAC v. Ryan,* 183 B.R. 288 (M.D.Fla.1995); *In re Knaus,* 889 F.2d 773, 774–75 (8th Cir. 1989)("the duty [to turnover property repossessed before the filing of a bankruptcy petition] arises upon the filing of a bankruptcy petition. The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."). A creditor rejecting the debtor's tender of protection as inadequate may not retain the property, but must turn over the property to the debtor and turn to the bankruptcy court for relief. *Id.*

There is an emerging minority view that a creditor need not turn over collateral seized prepetition until adequate protection has been provided. *See In re Spears,* 223 B.R. 159, 166–67 (Bankr.N.D.Ill.1998); *In re Fitch,* 217 B.R. 286, 291 (Bankr. S.D.Cal.1998); *In re Young,* 193 B.R. 620 (Bankr.D.D.C.1996) (rejecting *In re Knaus* and finding that creditor that seized collateral before bankruptcy petition filed was entitled to demand adequate protection before turning over collateral); *In re Richardson,* 135 B.R. at 259 (finding that the automatic stay is designed to preserve the status quo at the time of bankruptcy petition's filing and that refusal to return automobile seized before petition filed is consistent with maintaining the status quo and not a violation of the automatic stay). These cases hold that the creditor is entitled to retain possession of the collateral until the adequate protection question has been resolved. *In re Spears,* 223 B.R. at 166. The creditor may hold the collateral until the bankruptcy court determines that the debtor or bankruptcy trustee has met its burden of proving adequate protection under 11 U.S.C. § 363(*o*)(1). *See In re Young,* 193 B.R. at 625.

■ The record shows that Mitchell provided BankIllinois proof of insurance on the vehicle in her initial March 12, 2002 letter demanding that BankIllinois return the vehicle.[4] (Debtor's Ex. 6). BankIllinois refused to return the vehicle after Mitchell demanded its return and provided proof of insurance. "Adequate protection"

---

4. The proof of insurance does not state a limit of liability under the section "Coverage for Damage to Your Auto." It states a $500 deductible for damage. It states that Mitchell's premium for coverage for damage resulting from a collision is $687, and that her premium for damage not caused by a collision is $236. The proof of insurance lists BankIllinois as a payee of claims under the policy. (Debtor's Ex. 6). Mitchell owed BankIllinois $9,239.25.

is meant only to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property, rather than to compensate the creditor for the bankruptcy-imposed delay in enforcing its rights in that property. *In re Addison Properties, Ltd. P'ship*, 185 B.R. 766, 769 (Bankr.N.D.Ill.1995) (citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)); *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 585 (Bankr.D.Colo.1995). Courts consider proof of insurance adequate protection for a creditor's interest in a debtor's automobile. *See In re Fitch*, 217 B.R. at 291 ("Demanding proof of insurance is a valid request for assurance [that prepetition position will be protected]."); *Carr*, 130 B.R. at 436 (creditor obligated to turn over automobile after filing of bankruptcy petition and verification of insurance); *In re Matthews*, 118 B.R. 398, 399 (Bankr. D.S.C.1989) (ordering turnover of automobile upon debtor's providing proof of insurance); *In re Loof*, 41 B.R. 855, 856 (Bankr. E.D.Pa.1984). Mitchell's vehicle was insured, protecting BankIllinois's interest.

The record shows that BankIllinois waited a substantial amount of time before asserting its right to adequate protection. Mitchell demanded that BankIllinois turn over the vehicle on March 12, 2002 and provided proof of insurance. Mitchell repeated her demand on March 19, 2002. (Debtor's Ex. 8). Mitchell filed her Complaint for Turnover and Damages on March 21, 2002. BankIllinois waited until March 27, 2002, more than two weeks after Mitchell demanded the vehicle's return and provided proof of insurance, to move for relief from the section 362 automatic stay and to assert its right to adequate protection.

■ A creditor has immediate access to the courts to obtain assurance adequate protection of the collateral under 11 U.S.C. § 362(e)-(f).[5] Under section 362(e), the court may condition or prohibit the debtor's use of collateral as necessary to provide adequate protection of the creditor's interest. *In re Zaber*, 223 B.R. 102, 104 (Bankr.N.D.Tex.1998). A creditor can seek such relief on an emergency basis under section 362(f), if the creditor's rights are threatened with irreparable harm. "The creditor with a secured interest in property included in the estate must look to [section 362(e)] for protection, rather than the nonbankruptcy remedy of posses-

---

**5.** Section 362(e) provides: "Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30–day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances."

Section 362(f) provides: "Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section."

sion." *Whiting Pools,* 462 U.S. at 204, 103 S.Ct. at 2313. "While the creditor may suggest terms of adequate protection, it may not unilaterally condition the return of the property on its own determination of adequate protection.... [A]ny prerequisite to turnover is determined by the bankruptcy court, not by the creditor." *In re Sharon,* 234 B.R. at 686 (quoting *In re Colortran, Inc.,* 210 B.R. 823, 827–28 (9th Cir. BAP 1997), *rev'd in part on other grounds,* 165 F.3d 35 (9th Cir.1998)); *see also In re Jackson,* 251 B.R. 597, 600–01 (Bankr.D.Utah 2000).

If BankIllinois considered the proof of insurance inadequate to protect its interest in the vehicle, it could have filed a motion under section 362(e), on an emergency basis if necessary under section 362(f). Instead, BankIllinois waited until after Mitchell twice demanded the return of the vehicle and filed her turnover complaint. It is true that BankIllinois offered to have "some serious Code Section 362 discussions" before Mitchell filed her turnover complaint. (Pl.'s Ex. 5). BankIllinois contends that these discussions would encompass the question of adequate protection. Once Mitchell provided proof of insurance on the automobile, however, BankIllinois could not retain the automobile based on its unilateral determination that the insurance was not adequate protection. The record and applicable law support the bankruptcy court's determination that BankIllinois's refusal to return the vehicle violated the section 362 automatic stay.[6]

### C. Damages

The bankruptcy court awarded Mitchell $8,520.97 in actual damages, declining to award punitive damages under section

362(h). BankIllinois challenges the actual damages award as unreasonable.

Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by [section 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition. *In re Sharon,* 234 B.R. at 687; *In re Diviney,* 225 B.R. 762, 774 (10th Cir. BAP 1998); *In re Abrams,* 127 B.R. 239, 243 (9th Cir. BAP 1991); *In re Knaus,* 889 F.2d at 775. A belief that withholding possession would not violate a stay does not preclude a finding of willful violation of section 362(h). *In re Sharon,* 234 B.R. at 687–88; *In re San Angelo Pro Hockey Club, Inc.,* 292 B.R. 118, 125 (Bankr. N.D.Tex.2003).

Mitchell informed BankIllinois of her bankruptcy petition and provided proof of insurance on March 12, 2002. (Debtor's Ex. 6). BankIllinois independently verified that the bankruptcy petition had been filed. (Pl.'s Ex. 5). BankIllinois continued to withhold possession of the vehicle deliberately and with knowledge of the bankruptcy petition. Even BankIllinois's asserted belief that it was entitled to retain possession of the automobile until Mitchell provided adequate protection for the bank's interest does not remove the willful nature of its actions. BankIllinois had ample opportunity to raise the adequate protection issue in the bankruptcy court before taking the actions that violated the automatic stay. *In re Diviney,* 225 B.R. at 774. Instead, BankIllinois waited for more than two weeks

---

**6.** This court does not rely on the bankruptcy court's statement that the tone of the communications between BankIllinois and Mitchell's counsel demonstrated that BankIllinois's stat-

ed willingness to compromise was pretense and that BankIllinois withheld possession of the car to improve its treatment in Mitchell's Chapter 13 bankruptcy plan. (Op. at 3–4).

before raising the question of inadequate protection in the bankruptcy court, in response to Mitchell's turnover motion. BankIllinois willfully violated the section 362 stay and is liable for Mitchell's actual damages under section 362(h).

BankIllinois contends that Mitchell's legal fees are unreasonable. BankIllinois notes that Mitchell's initial complaint incorrectly alleged that the vehicle was repossessed after the bankruptcy petition was filed and the automatic stay went into effect. (Complaint at ¶ 15). BankIllinois contends that Mitchell's counsel did not cooperate with its efforts to settle the case, delaying a resolution and increasing the attorney fees both parties incurred.

■■■ The bankruptcy court's award of attorney's fees is reviewed for abuse of discretion, as are determinations regarding rates and hours. *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir.2000); *In re Anderson*, 936 F.2d 199, 203 (5th Cir.1991). Findings of fact supporting the award of attorney fees in bankruptcy cases are reviewed for clear error. *In re Fender*, 12 F.3d 480, 487 (5th Cir.1994). The requested fees must bear a reasonable relationship to the amount in controversy. *Mid–Continent Cas. Co.*, 205 F.3d at 232; *Jerry Parks Equipment Co. v. Southeast Equipment Co.*, 817 F.2d 340, 344 (5th Cir.1987).

■■■ This circuit uses the lodestar method for calculating reasonable attorney fees. *See Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir.1992). The first step of this analysis is to determine the reasonable hourly rate for the attorneys and non-legal personnel who worked on the case. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995). The reasonable hourly rate is "based on the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The court must then determine the number of hours "reasonably expended" by the attorneys. *See Kellstrom*, 50 F.3d at 324; *Hensley v. Eckerhart*, 461 U.S. 424, 431, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The court then multiplies the hours "reasonably expended" by the reasonable hourly rate to determine the lodestar figure. *See Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 850 (5th Cir.1998). The burden of demonstrating the reasonableness of the number of hours expended and the hourly rates charged falls on the fee applicant. *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. The lodestar amount is the starting point for the fee calculation. The court may increase or decrease the lodestar amount based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).[7]

■■■ The bankruptcy court noted the fact that much of the litigation in the adversary proceeding related to the issue of whether BankIllinois was liable for repossessing the vehicle postpetition, which resulted from the inaccurate allegation in Mitchell's complaint. The bankruptcy court also reviewed Mitchell's counsel's billing records as a whole and determined that some of the fees were charged for work unrelated to this case. The bank-

---

7. The twelve *Johnson* factors are: (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

ruptcy court reduced Mitchell's attorney fee recovery by $2,000 to account for these expenditures.

BankIllinois contends that it was unreasonable for Mitchell's attorney to bill six hours for drafting the complaint. The billing records of Mitchell's attorney, Richard Aurich, show that he billed six hours on March 21, 2002 for the following work:

Research BankIllinois service information. Telephone call to BankIllinois. Preparation, filing, and service of Complaint and Motion for Emergency Hearing.

(Debtor's Ex. 4). According to Mitchell's counsel's billing records, the six hours BankIllinois challenges as unreasonable included research to find the address and agent of BankIllinois for service of process as well as drafting the complaint and motion for emergency hearing and arranging for filing and service. Aurich testified that he had difficulty finding the address for service of process through BankIllinois's Internet website because BankIllinois has numerous branches. (Transcript, June 21, 2002, p. 28, 1.15–1.24). Aurich testified that once he found the proper BankIllinois branch upon which to serve process, he spent "quite a bit of time" on the telephone to find the proper agent for service of process. (*Id.* at p. 28, 1.25–p. 29, 1.2). The bankruptcy court's finding that Aurich's six-hour billing entry on March 21, 2002 was reasonable is not clearly erroneous.

BankIllinois argues that Mitchell rejected its offers to negotiate a settlement, prolonging the action and unnecessarily increasing the attorney fees incurred. BankIllinois contends that "the bargaining leverage was all on the debtor's side" because BankIllinois, an out-of-town bank, was forced to defend a suit over a car with a value of only $7,650. (Docket Entry No. 8, p. 4).

The record reveals that the bank's conduct contributed to the delays. Mitchell waited over a week before receiving a response to her demand. Mitchell made a second demand that BankIllinois return her car, threatening to begin a turnover proceeding, before BankIllinois responded to her request. (Debtor's Ex. 8). BankIllinois's contention that Mitchell held "all the bargaining leverage" is inconsistent with the fact that BankIllinois retained possession of the vehicle even after Mitchell provided proof of insurance. The record shows that Mitchell lost wages and incurred rental car charges during the period BankIllinois refused to return the car. BankIllinois's decisions to retain the vehicle after demand and to delay any challenge to the adequacy of the insurance as protection for its interest violated the section 362 automatic stay. These decisions delayed the resolution of the action and caused Mitchell to bring this adversary action.

■ The fact that Mitchell's actual damages and attorney fees are roughly equal to the value of the vehicle does not make the award unreasonable. BankIllinois's failure to return the vehicle required Mitchell to file the turnover action. Disproportion alone does not make an award of attorney fees excessive. *See Northwinds Abatement, Inc. v. Employers Ins. of Wausau,* 258 F.3d 345, 354–55 (5th Cir. 2001) (award of attorney fees that was three times the size of trebled damages award not unreasonable solely on that ground). Mitchell prevailed on all her claims. An award of attorney fees roughly equal to the damages she suffered is not so disproportionate as to make the attorney fee award excessive.

■ The bankruptcy court's findings of fact underlying its award of attorney fees under section 362(h) were not clearly erro-

neous. The bankruptcy court did not abuse its discretion in awarding Mitchell $8,520.97 in actual damages, including attorney fees, under section 362(h). Mitchell is also entitled to the attorney fees and costs for defending this appeal. "[Section 362(h)] requires an award of actual damages, including reasonable attorney's fees, caused by the stay violation. Clearly, fees and costs experienced by the injured party in resisting the violator's appeal are part of the damages resulting directly from the stay violation." *In re Walsh,* 219 B.R. 873, 878 (9th Cir. BAP 1998). Although Mitchell raised the question of appellate attorney fees at trial, the bankruptcy court did not address this request in its decision. (Transcript, June 21, 2002, p. 70, 1.22–1.24; Op. at 3–4, 8).

## IV. Conclusion

The bankruptcy court's ruling is AFFIRMED. Mitchell is entitled to receive $8,520.97 in actual damages, plus attorney fees and costs incurred in defending this appeal. Mitchell must submit documentation of the fees incurred in defending this appeal within ten days from the date this Memorandum and Order are filed.